NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
EMANUEL B. TOWNSEND (SBN 305373)
etownsend@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator*

FILED
2016 APR 19 A 10: 46

SEALED
BY COURT ORDER

MEJ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA; ex rel. [FILED UNDER SEAL],<br><br>Plaintiffs,<br><br>v.<br><br>[FILED UNDER SEAL],<br><br>Defendants. | CASE NO. CV 16 2043<br><br>**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)] |

**COMPLAINT**

NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
EMANUEL B. TOWNSEND (SBN 305373)
etownsend@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator STF, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA; ex rel. STF, LLC, an organization,<br><br>Plaintiffs,<br><br>v.<br><br>CRESCENDO BIOSCIENCE, INC., a Delaware corporation; and MYRIAD GENETICS, INC., a Delaware corporation,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**[FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)]** |

**COMPLAINT**

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION .................................................................................................................. 1

II. JURISDICTION AND VENUE ........................................................................................... 2

III. PARTIES ................................................................................................................................. 2

IV. STATUTORY BACKGROUND ......................................................................................... 2

    A. The False Claims Act ............................................................................................. 2

    B. The Medicare Program .......................................................................................... 3

V. DEFENDANTS KNOWINGLY VIOLATED THE FEDERAL AND CALIFORNIA FALSE CLAIMS ACTS ............................................................................ 6

    A. Defendants' Pay Illegal Kick Backs to Physicians in the form of $15 "Draw," "Packaging" or "Processing" Fees in Violation of the False Claims Acts ............ 7

    B. Defendants' Illegally Promise to Physicians to Cap Patient Co-Pay and Deductible Responsibilities ................................................................................... 9

VI. CAUSES OF ACTION ......................................................................................................... 11

FIRST CAUSE OF ACTION
On Behalf of the United States Federal False Claims Act, Presenting False Claims 31 U.S.C. § 3729(a)(1)(A) .......................................................................................... 11

SECOND CAUSE OF ACTION
On Behalf of the State of California
CALIFORNIA FALSE CLAIMS ACT, PRESENTING FALSE CLAIMS
California Government Code § 12651(a)(1) ........................................................... 12

VII. PRAYER FOR RELIEF ..................................................................................................... 12

VIII. DEMAND FOR JURY TRIAL ........................................................................................ 14

1  Plaintiffs UNITED STATES OF AMERICA ("United States"), and STATE OF
2  CALIFORNIA ("California"), by and through Relator STF, LLC, allege as follows:

## I. INTRODUCTION

3
4  1. CRESCENDO BIOSCIENCE, INC. ("CRESCENDO") and its parent company,
5  MYRIAD GENETICS, INC. ("MYRIAD") (collectively, "DEFENDANTS"), are perpetrating a
6  fraud on U.S. and California taxpayers through a kickback scheme designed to defraud Medicare
7  and Medicaid.

8  2. DEFENDANTS provide illegal kickbacks to doctors and clinics to induce those
9  doctors and clinics to refer highly profitable Medicare and Medicaid laboratory business to
10  CRESCENDO. CRESCENDO and MYRIAD pay kickbacks to physicians in the form of well
11  above market and unlawful "processing" fees.

12  3. In short, a doctor or a member of the doctor's staff performs a blood draw at the
13  doctor's office and then ships the sample to CRESCENDO's lab in California. The test is
14  performed at the lab, and the test results are reported to the physician. In exchange the doctor
15  receives a $15 payment per test for "processing" the blood sample. This practice constitutes an
16  illegal kickback scheme, with the lab literally handing over envelopes with money to physicians in
17  exchange for referring testing business.

18  4. CRESCENDO and MYRIAD also provide illegal kickbacks leading to the
19  submission of false claims by agreeing with doctors they will cap the amount of the patient's
20  possible responsibility for a test, either through a co-pay or deductible, at $25, and promising
21  physicians they will not send patients to collections if the patient does not pay his bill.

22  5. This encourages doctors to refer patients for unnecessary testing, encourages
23  doctors to refer additional patients, and allows doctors to promise their patients they will not be
24  charged more than $25 and will not face collections agencies, no matter how their insurance
25  handles the test, the status of their deductible, and the amount of any co-pay. In exchange,
26  CRESCENDO expects doctors will refer additional patients, especially government pay business.
27  This scheme is no more legal than if Defendants simply handed doctors envelopes with money in
28  exchange for Medicare, Medicaid, and other referrals.

6. This is a *qui tam* action for violation of the federal False Claims Act (31 U.S.C. §§ 3150 et seq.) and the California False Claims Act (Cal. Gov. Code §§ 12650 et seq.) to recover treble damages, civil penalties and attorneys' fees and costs for Plaintiffs and on behalf of the United States, and California for fraudulent Medicare and Medicaid.

7. Non-public information personally known to Relator STF, LLC ("STF") serves as the basis for this action.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 31 U.S.C. sections 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the federal False Claims Act, and authorize nationwide service of process. Venue is proper in this district pursuant to 31 U.S.C. section 3732(a), as all Defendants transact business in the Northern District of California and CRESCENDO operates in the Northern District of California.

## III. PARTIES

9. The plaintiffs in this action are the UNITED STATES OF AMERICA ("United States"), and the STATE OF CALIFORNIA ("California"), by and through Relator STF, LLC.

10. Relator STF, LLC is a limited liability company, whose members are involved in the healthcare industry.

11. Defendant CRESCENDO BIOSCIENCE, INC. is a Delaware corporation with its principal places of business in South San Francisco, California.

12. Defendant MYRIAD GENETICS, INC. is a Delaware Corporation with its principle place of business in Salt Lake City, Utah. MYRIAD purchased CRESCENDO for $270 million in February 2014.

## IV. STATUTORY BACKGROUND

### A. The False Claims Act

13. The Federal False Claims Act ("FCA"), as amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. 111-21, section 4(f), 123 Stat. 1617, 1625 (2009), provides, in pertinent part, that a person is liable to the United States government for three times the amount of damages the government sustains because of the act of that person, plus a civil

penalty, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(1)(1)(A).

14. The FCA defines the term "claim" to mean "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be drawn down or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

15. As amended by FERA, the FCA also makes a person liable to the United States government for three times the amount of damages which the government sustains because of the act of that person, plus a civil penalty, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

16. The FCA defines the terms "knowing" and "knowingly" to mean that a person, with respect to information: (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). The FCA further provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

**B. The Medicare Program**

17. Medicare is administered by the United States government and provides health coverage to people 65 years of age and older. Medicare's costs are staggering. In 2014, Medicare expenditures accounted for 14% of all federal spending.

18. To ensure taxpayers' dollars are funding truly necessary and appropriate medical treatment, Medicare providers are prohibited from submitting reimbursement claims for items and services neither reasonable nor necessary for the diagnosis or treatment of a Medicare patient. 42 U.S.C. § 1395y(a)(1)(A).

19. Medicare, along with the Department of Health and Human Services have long prohibited providers from charging Medicare for services which are tainted by unlawful kickbacks. Unlawful kickback schemes are strictly prohibited by the Medicare statutes and give rise to False Claims Act liability.

20. The Affordable Care Act, passed in March 2010, made explicit that violations of the Anti-Kickback Statute (42 U.S.C. § 1320a-7b) gave rise to False Claims Act liability: "a claim that includes items or services resulting from a violation of [the Anti-Kickback Statute] <u>constitutes a false or fraudulent claim</u> for purposes of [the False Claims Act]." 42 U.S.C. § 1320a-7b(g).

21. Specifically, the Anti-Kickback Statute creates liability for "whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) <u>directly or indirectly, overtly or covertly</u>, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program. . . ." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added).

22. Interpretations of this language by the federal authorities provide useful guidance in applying anti-kickback laws. The Department of Health and Human Services, Office of the Inspector General ("OIG") has issued various advisory opinions regarding indicia of illicit schemes that providers have employed to defraud Medicare.

23. In June 2005, the OIG issued an Advisory Opinion concluding that payments by a laboratory to referring physicians of $6 per day for "collection of blood samples," likely constituted "prohibited remuneration under the anti-kickback statute." OIG Advisory Opinion No. 05-08, at pp. 1-2, available http://oig.hhs.gov/fraud/docs/advisoryopinions/2005/ao0508.pdf. Specifically, the OIG stated:

> <u>Where a laboratory pays a referring physician to perform blood draws, particularly where the amount paid is more than the laboratory receives in Medicare reimbursement, an inference arises that the compensation is paid as an inducement to the physician to refer patients to the laboratory . . . .</u>
>
> . . . . Because the physicians would receive a portion of the Lab's reimbursement for blood tests resulting from the physicians' referrals, <u>the physicians have a strong incentive to order more blood tests. As a result,</u>

>   there is a risk of overutilization and inappropriate higher costs to the Federal health care programs.

OIG Advisory Opinion No. 05-08, at p. 4 (emphasis added).

24. OIG Advisory Opinion No. 05-08 considered whether a laboratory's proposal to pay physicians for the collection of blood samples and to provide free blood drawing supplies would constitute grounds for imposition of sanctions due to violation of the AKS. HHS concluded such a structure gave rise to the inference that the payments were made in exchange for referrals because the offer carried a "substantial risk that the Lab would be offering the blood draw remuneration to the physicians in exchange for referrals . . . [and that] the compensation provides an obvious benefit to the referring physician." OIG Advisory Opinion No. 05-08 at 4.

25. Standard industry practice allows a laboratory to pay physicians and medical assistants a nominal fee for the small amount of time it takes to draw, collect and package a specimen. Medicare, for example, permits a $3 per patient payment to physicians for drawing a patient's specimen. These "Specimen Processing Arrangements" must comply with the Anti-Kickback Statute such that physicians are not induced to order medically unnecessary and unreasonable tests in order to receive remuneration.

26. However, as stated by the OIG, when a laboratory pays a referring physician for performing blood draws, and the amount <u>exceeds</u> $3, "an inference arises that the compensation is paid as an inducement to the physician to refer patients to the laboratory." OIG Advisory Opinion No. 05-08, p. 4; *see also* OIG Special Fraud Alert: Laboratory Payments to Referring Physicians, p. 4, n.10 (June 2014) ("2014 Special Fraud Alert").

27. The OIG's 2014 Special Fraud Alert described aspects of specimen processing arrangements that evidence unlawful practices. These aspects include: (1) payment that exceeds fair market value for services actually rendered by the party receiving the payment; (2) payment that is made directly to the ordering physician rather than to the ordering physician's group practice, which bears the cost of collecting and processing the specimen; and (3) payment that is made on a per-test, per-patient, or other basis that takes into account the volume of referrals. *See* 2014 Special Fraud Alert, p. 4-5.

28. These statements are consistent with prior Advisory opinions, long notifying the industry that giving anything of value not paid for at fair market value gives rise to an inference that the gift is offered to induce business and is therefore a kickback. *See* OIG Special Fraud Alert: Arrangements for the Provision of Clinical Laboratory Services (Issued October 1994), available at https://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html, ("Whenever a laboratory offers or gives to a source of referrals anything of value not paid for at fair market value, the inference may be made that the thing of value is offered to induce the referral of business.").

29. California law is equally clear. As stated in a recent Notice issued by the California Department of Public Health, the following scenario violates California's Anti-Kickback provision (Business and Professions Code § 650):

> An employee of a physician is also paid by a laboratory as an "independent" phlebotomist to collect specimens for the physician's patients. After the issuance of the federal OIG Special Fraud Alert issued June 25, 2014, a laboratory has changed its practices and now enters into a contractual arrangement directly with an individual, who is a member of a physician's office staff, to provide phlebotomy services to the laboratory. The individual provides the phlebotomy services on-site in the physician's office. The individual remains an employee of the physician's office and simultaneously receives payments directly from the laboratory as an independent contractor to the laboratory. In some circumstances the physician reduces the salary or compensation to that individual when such an arrangement is in place.

*See* https://www.cdph.ca.gov/programs/lfs/Documents/CLTAC%20Non-Compliance%20Inducement%20letter.pdf (last visited April 15, 2016).

## V. DEFENDANTS KNOWINGLY VIOLATED THE FEDERAL AND CALIFORNIA FALSE CLAIMS ACTS

30. CRESCENDO conducts testing for auto-immune and inflammatory diseases for rheumatologists. CRESCENDO operates a CLIA certified laboratory in South San Francisco, California. MYRIAD purchased CRESCENDO for $270 million in February 2014. MYRIAD has profited from, participated in, and been aware of CRESCENDO's fraud.

31. CRESCENDO focuses on testing for rheumatoid arthritis ("RA"). CRESCENDO's main test, known as "VectraDA" is described by the company as the "first and only multi-

biomarker blood test validated to measure RA disease activity. VectraDA integrates the concentrations of 12 serum proteins associated with RA disease activity into a single objective score to help physicians make more informed treatment decisions." The testing is performed at the lab in South San Francisco.

32. The doctor or her staff perform the blood draw at the doctor's office and then ship the sample to CRESCENDO's lab in California. The VectraDA test is conducted at the "specialized" lab, and the test results are reported to the physician, generally 5 to 7 days after they ship the blood sample.

### A. Defendants' Pay Illegal Kick Backs to Physicians in the form of $15 "Draw," "Packaging" or "Processing" Fees in Violation of the False Claims Acts

33. CRESCENDO and MYRIAD pay kickbacks to physicians in the form of unlawful "processing" fees, set at levels far above fair market value. Defendants were then referred patients by these doctors, and submitted claims for payment to Medicare which were tainted by illegal kickbacks.

34. CRESCENDO enters into contractual agreements with doctors who have patients that may be eligible for CRESCENDO's testing services. Those contracts provide that the physician or a member of her staff will conduct the blood draw at their office into "serum separator tubes" ("SSTs") which are provided to the physician by CRESCENDO. The contracts and agreements provide that once the physician or staff member performs the draw into CRESCENDO's SSTs, the physician applies a "barcode label" provided by the company as part of a "Specimen Kit," and ships them to CRESCENDO's lab for analysis.

35. In addition to the Specimen Kit, CRESCENDO provides "all materials" needed for packaging and shipping and pays for the shipping through pre-printed shipping labels which are included in the Specimen Kits. CRESCENDO's contracts provide that it is responsible for "delivering to the [physician] the Specimen Collection Kits and any other additional information, data, supplies or equipment (if any) necessary for the [physician] to perform the Processing Services in accordance with the Agreement."

36. When a physician signs the agreement with CRESCENDO, they receive a "Welcome Letter," from Sharon Dwyer, Director of Customer Service, stating: "To help you with the invoice process Crescendo will email you a statement each month listing all the samples our lab has received from you during the prior month. <u>To expedite payment simply reply back to the email indicating agreement with the information I've provided and I will submit the statement on your behalf to Account Payable</u>." (Emphasis in original.)

37. CRESCENDO then pays the physicians a "processing" fee of $15 <u>per SST</u>. This is true regardless of how many tubes are included in any shipment from a physician on a given day or the number of patients from whom blood is drawn.

38. At the end of each month during which a physician sent a blood sample to CRESCENDO's lab, CRESCENDO sends the physician a "Lab Test Receipt." This is effectively an invoice. The Lab Tests Receipt includes the number of patients for which samples were sent and "scored," the date the sample was received, a "TRFID" number, and the "Per Test Lab Fee" of $15.00.

39. CRESCENDO generally emails these invoices to the doctor, from an email account titled "Sample Processing Agreement <spa@crescendobio.com>." CRESCENDO informs the physician it will submit the Lab Tests Receipt directly to MYRIAD's accounting on behalf of the physician.

40. MYRIAD then sends a check to the physician, pursuant to CRESCENDO's contract to pay the physicians. Each check is sent to the physician with an "Invoice Number" from MYRIAD, a date, and a "description" that notes the month the payment covers.

41. Because CRESCENDO and MYRIAD know such payments are illegal, the contract goes to great lengths to describe this fee as "fair market value" for the physician's work. This is false. A $15 fee for the draw, processing, packaging or handling is <u>not</u> fair market value.

42. In reality, $15 is well above the market value of the time, effort or materials required for the blood draw.

43. Both standard industry practice, standard valuation of blood draw fees and costs, and Medicare reimbursement rules make this clear. For example, CMS can make a separate

**COMPLAINT** 8

payment to providers for collection of the blood specimen where the draw and the test are performed by different entities. Medicare reimburses medical providers a specimen collection fee for drawing a blood sample through venipuncture. *See* Medicare Claims Processing Manual, Chapter 16 – Laboratory Services, Section 60.1.

44. A physician whose staff performs blood draws on their own patients and then sends those samples to independent laboratories can also report the service with Healthcare Common Procedure Coding System ("HCPCS") Code 36415, "collection of venous blood by venipuncture."

45. The venipuncture fee for Medicare is $3.00.

46. Defendants pay physicians over five times what is considered to be fair market value in the industry and five times the Medicare reimbursement rate. This remuneration is illegal as it is designed to induce physicians to order the VectraDA test from CRESCENDO and to induce the referral of patients. This payment "provides an obvious financial benefit to the referring physician, and it may be inferred that this benefit would be in exchange for referrals to the Lab." OIG Advisory Opinion No. 05-08, at p. 4.

47. The "processing" fees paid by CRESCENDO have the effect of incentivizing physicians to order more tests, creating a "risk of overutilization and inappropriate higher costs to the Federal health care programs." See OIG Advisory Opinion No. 05-08, at p. 4.

48. CRESCENDO presented to Medicare claims for reimbursement of laboratory tests which were ordered by physicians in exchange for kickbacks.

49. Each of these claims constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 et seq.). CRESCENDO has certified, both explicitly and implicitly, that each claim they submitted to Medicare would fully comply with all statutes and regulations, and that as Medicare providers they would comply with all pertinent statutes and regulations.

**B. Defendants' Illegally Promise to Physicians to Cap Patient Co-Pay and Deductible Responsibilities**

50. In October 1994, the OIG issued a Special Fraud Alert, "How Does the Anti-Kickback Statute Relate to Arrangement for the Provision of Clinical Lab Services?" ("1994 Special Fraud Alert"; available at http://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html.)

**COMPLAINT** 9

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

As an example of an illegal kickback, the Special Fraud Alert cited laboratories that waive charges to providers for lab tests of managed care patients (such as the co-payments of patients here).

51.     The vast majority of a physician's non-Medicare patients will be covered by private insurance. When a patient has not met their deductible with their insurance carrier, the patient is responsible for paying the cost of the test. The VectraDA test offered by CRESCENDO has a "list price" of $989.00. The government pays $574.77. Accordingly, where a patient has not met their deductible, they will owe between $500 and $989.

52.     Additionally, even when a patient has met their deductible, most private insurance plans require a patient ordering a laboratory test make a co-payment of approximately 20% of allowable charges to the laboratory. In the case of the VectraDA test, a 20% payment often exceeds $100.

53.     In order to induce the referral of additional business, especially government pay business, CRESCENDO does not charge patients any amount in excess of $25, regardless of the amount of the patient's responsibility, and agrees not to send any patients to collections, even if the $25 is never paid. CRESCENDO tells doctors this so that they can reassure their patients that they will not be responsible for more than $25, regardless of the amount they owe. These caps are of value to both physicians and their patients.

54.     Regardless of the amount CRESCENDO bills, and regardless of the amount a patient is ultimately responsible for under their insurance plan, the patient will never be required to pay more than $25.

55.     CRESCENDO knows this strategy is illegal because it provides a significant benefit to a referring physician. In an effort to conceal their scheme and avoid liability, CRESCENDO informed its sales personnel not to including in email these facts. Instead, this information is communicated to doctors in other ways.

56.     For example, Kerri Jacobson, a former sales person at CRESCENDO, and who received a promotion to a training position, was asked in April 2016 "From a pricing and billing point of view, can you remind me what the charge (co-pay) is for patients with PPO insurance and what the options are if they feel they can't pay?"

57. In response, on April 11, 2016, Ms. Jacobsen both sent a text message and an email. The text message stated: "I can't put in email our max out of pocket for our test on Email [sic] but wanted to let you know it is $25." The first of two emails stated, "We have a max out of pocket for PPO, Cash, and IPA patients. And medicare patients do not have a co-pay for up to 2 tests per year." The second email explained "Glad you got my text:)" The only time a patient is ever asked to pay more than $25 to CRESCENDO is if the patient's insurance company sends payment to the patient, instead of directly to CRESCENDO on the patient's behalf.

58. Ms. Jacobson also informed the physician that CRESCENDO would not go after patients for unpaid balances or send them to collections. On April 14, 2016, Ms. Jacobson wrote "No we do not currently send patients to collections. However if a patient gets a check from their insurance company and does not send it to us then we will bill for that amount of what they got from insurance. But haven't sent them to collections."

59. The agreement not to collect from patients and the cap on the amount of money a patient is responsible to pay both violate the False Claims Act.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### On Behalf of the United States
### Federal False Claims Act, Presenting False Claims
### 31 U.S.C. § 3729(a)(1)(A)

60. Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 28 of this Complaint as though fully set forth herein.

61. Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) caused to be presented false claims for payment or approval to an officer or employee of the United States.

62. Defendants knowingly caused to be presented false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges by the Medicare, Medicaid, and other government-funded programs that were higher than they were permitted to claim or charge by applicable law. Among other things, Defendants knowingly caused the submission of false claims for Medicare,

Medicaid, and other government programs' business that was obtained by means of, and as a result of, illegal kickbacks.

63.  The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

64.  Wherefore, Plaintiffs pray for relief as further set forth below.

## SECOND CAUSE OF ACTION

### On Behalf of the State of California

### CALIFORNIA FALSE CLAIMS ACT, PRESENTING FALSE CLAIMS

### California Government Code § 12651(a)(1)

65.  Plaintiffs incorporate by reference and reallege all of the allegations contained in paragraphs 1 through 28 of this Complaint as though fully set forth herein.

66.  Defendants knowingly (as defined in California Government Code section 12650, subdivision (b)(2)), presented or caused to be presented false claims for payment or approval to an officer or employee of California.

67.  Defendant knowingly caused to be presented claims for payment or approval for services that were procured by means of illegal kickbacks.

68.  The conduct of Defendant violated Government Code section 12651, subdivision (a)(1), and caused California to sustain damages in an amount according to proof pursuant to California Government Code section 12651, subdivision (a).

69.  Wherefore Plaintiffs pray for relief as set for the below.

VII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs by and through Relator, pray judgment in its favor and against Defendants as follows:

1.  Defendants' conduct violated the Federal False Claims Act, the California Insurance Frauds Prevention Act, and was a substantial factor in causing the United States and the state of California, to sustain damages in an amount according to proof pursuant to the Federal False Claims Act, the California Insurance Frauds Prevention Act, and the California False Claims Act. That judgment be entered in favor of plaintiffs UNITED STATES OF AMERICA, and

STATE OF CALIFORNIA, ex rel. STF, LLC, and against Defendants BIOTEX SOLUTIONS INC., and OSCAR CARRILLO, according to proof, as follows:

    a.    On the **First Cause of Action** (Presenting or Causing to Be Presented False Claims (31 U.S.C. § 3729(a)(1)(A))) damages as provided by 31 U.S.C. § 3729(a)(1), in the amount of:

        i.    Triple the amount of damages sustained by the Government;

        ii.    Civil penalties of Eleven Thousand Dollars ($11,000.00) for each false claim;

        iii.    Recovery of costs;

        iv.    Pre- and post-judgment interest;

        v.    Such other and further relief as the Court deems just and proper;

    b.    On the **Second Cause of Action** (Presenting or Causing to be Presented False Claims (Cal. Gov. Code § 12651(a)(1)) damages as provided by Cal. Gov. Code § 12651(a), in the amount of:

        i.    Triple the amount of California's damages;

        ii.    Civil penalties of Eleven Thousand Dollars ($11,000.00) for each false claim;

        iii.    Recovery of costs, attorneys' fees, and expenses;

        iv.    Pre- and post-judgment interest;

        v.    Such other and further relief as the Court deems just and proper.

///
///
///
///
///
///
///
///

2. Further, Relator, on its own behalf, pursuant to 31 U.S.C. section 3730(d) and Cal. Gov. Code § 12652(g), requests that Relator receive such maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States and/or California, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. Relator requests that its percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

Respectfully Submitted,

Dated: April 19, 2016                **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
NIALL P. McCARTHY
JUSTIN T. BERGER
ERIC J. BUESCHER
EMANUEL B. TOWNSEND

*Attorneys for Relator STF, LLC*

## VIII. DEMAND FOR JURY TRIAL

Relator STF, LLC hereby demands a jury trial on all issues so triable.

Respectfully Submitted,

Dated: April 19, 2016                **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
NIALL P. McCARTHY
JUSTIN T. BERGER
ERIC J. BUESCHER
EMANUEL B. TOWNSEND

*Attorneys for Relator STF, LLC*