GISELLE J. JOFFRE (admitted pro hac vice)
gjoffre@foleyhoag.com
MICHAEL J. LICKER (admitted pro hac vice)
mlicker@foleyhoag.com
JOANNA MCDONOUGH (admitted pro hac vice)
jmcdonough@foleyhoag.com
**FOLEY HOAG LLP**
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone:    (617) 832-1000
Facsimile:    (617) 832-7000

CAROLYN F. McNIVEN (SBN 163639)
mcnivenc@gtlaw.com
JEFFREY P. PALMER (SBN 229314)
palmerj@gtlaw.com
BRIAN Q. HALL (SBN 318209)
hallbri@gtlaw.com
**GREENBERG TRAURIG, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1270
Facsimile: (415) 707- 2010
Attorneys for Defendants
CRESCENDO BIOSCIENCE, INC. AND
MYRIAD GENETICS, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA; ex rel. STF, LLC, an organization,<br><br>        Plaintiffs,<br><br>v.<br><br>CRESCENDO BIOSCIENCE, INC., a Delaware corporation; and MYRIAD GENETICS, INC., a Delaware corporation,<br><br>        Defendants. | Case No. 3:16-cv-02043-TSH<br><br>**DEFENDANTS' SUBMISSION OF UNPUBLISHED AUTHORITY IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE: May 28, 2020<br>TIME:   10:00 a.m.<br>CTRM:  G, 15th Floor<br>JUDGE: Hon. Thomas S. Hixson |

1        Defendants Crescendo Bioscience, Inc. and Myriad Genetics, Inc. (collectively,

2  "Defendants") hereby furnish the Court with copies of the following unpublished authorities

3  cited in Defendants' contemporaneously filed Motion to Dismiss:

4        •  *State of California, ex rel Rockville Recovery Associates, LTD v. Multiplan, Inc. et al.*,

5           Case No. 34-2010-00079432 (Super Ct. Cal. - Sacramento August 26, 2013) (attached

6           hereto as Exhibit A);

7        •  *State of California v. Encino Hospital Medical Center, et al.*, BC 641254 (Super. Ct.

8           Cal. - Los Angeles June 10, 2019) (attached hereto as Exhibit B).

9

10  Dated: April 16, 2020                By */s/ Michael J. Licker*

11                               Michael J. Licker

12                   **FOLEY HOAG LLP**

Giselle J. Joffre (*pro hac vice*)

13                 Michael J. Licker (*pro hac vice*)

Joanna McDonough (*pro hac vice*)

14                 **GREENBERG TRAURIG, LLP**

15                 Carolyn F. McNiven (SBN 163639)

Jeffrey P. Palmer (SBN 229314)

16                 Brian Q. Hall (SBN 318209)

17                 Attorneys for Defendants Crescendo

Bioscience, Inc., and Myriad Genetics, Inc.

18

19

20

21

22

23

24

25

26

27

28

1

## **FILER'S ATTESTATION**

2     Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that all signatories to this document have

3     concurred in its filing.

4

5     Dated:  April 16, 2020                     By: */s/ Brian Q. Hall*
                                                        Brian Q. Hall

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on April 16, 2020, pursuant to Local Rule 5-1 and Federal Rule of

3   Civil Procedure 5(b), that the foregoing document was filed electronically with the Clerk of the

4   Court using the CM/ECF and served upon counsel of record.

5

6    Dated:  April 16, 2020                    By: */s/ Brian Q. Hall*

7                                                  Brian Q. Hall

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



**FILED**

Superior Court of California
County of Sacramento
Civil

AUG 26, 2013

03:08 PM

A. Cruz, Courtroom Clerk

**Department 45**
**Superior Court of California**
**720 Ninth Street, 6th Floor**
**Judy Holzer Hersher, Judge**
**Alicia Cruz, Clerk**
**(916) 874-8240**

**Final Pretrial Ruling on Pre-Trial Motions**

**August 26, 2013**

**State of CA vs. Multiplan**                          **Case No. 2010-79432**

The following are the Court's final rulings on four (4) separate pre-trial motions in The State of California, *ex rel* Rockville Recovery Associates LTD, Plaintiffs v. Multiplan, Inc., et al., Defendants, Case No. 34-2010-00079432.  The Court heard oral argument on its tentative rulings on Friday, August 9th, 2013.  It requested that counsel provide supplemental briefing by way of submission of a chart addressing the relevant cases addressing a right to jury or court trial on recent statutory enactments.  The Court received and reviewed the supplemental filings and, where appropriate, has modified its ruling on the issue of the right to jury trial as set forth below.

In this case, Plaintiffs allege that Defendants have defrauded or mislead or submitted false claims to insurers and/or conspired, aided, solicited or abetted to do so for approximately 13 years in violation of the Insurance Fraud Prevention Act ("IFPA"), specifically Ins. Code section 1871.7(b).  Some of what the parties seek addressed in these motions are issues of first impression with respect to the IFPA. The Court appreciates the scope and depth of the presentations in the parties' papers and at oral argument.   The case is set for trial in early November, 2013, before the undersigned.

## 1.  Sutter Defendants' Motion for Initial Court Trial of Claims for Declaratory and Injunctive Relief.

The motion of the Sutter Defendants (joined by Multiplan, Inc. and Private Healthcare Systems, Inc. "PPO" Defendants) for bifurcation and an initial court trial of Plaintiffs' equitable claims for declaratory and injunctive relief is **DENIED**.

1

As discussed more extensively below in the Court's ruling upon the Sutter Defendants' Motion to Strike Plaintiffs' jury demand, the Court has found that this case presents both equitable and legal claims and that Plaintiffs are entitled to trial by jury upon the legal claims.  Thus, the case involves a mix of legal and equitable claims.

Defendants are correct that in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury or with an advisory jury, and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury. (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 670; *Hoopes v. Dolan* (2008) 168 Cal.App.4th 146.) "[T]he practical reason for this procedure is that the trial of the equitable issues may dispense with the legal issues and end the case." (*Hoopes v. Dolan*, *supra*, 168 Cal.App.4th at p. 157 citing *Moss v. Bluemm* (1964) 229 Cal.App.2d 70, 73.) In short, "trial of equitable issues first may promote judicial economy." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1238.)   The concept of trying equitable claims first is characterized as a "preference," but is generally left to the discretion of the trial court.

Having considered the parties' arguments, and the contours of the statute, claims and remedies at issue in this matter, the Court is not persuaded that bifurcation as requested by the Sutter Defendants is the best procedural or substantive course in this action, or that doing so would likely promote judicial economy.

### 2.  Sutter Defendants Motion for an Order requiring Plaintiff to Present *Seriatim* evidence as to each alleged victim insurance company's subjective understanding of the Sutter Defendants' time-based 37x charges

The motion is **DENIED**.

Sutter Defendants are really asking the Court for several things in their motion styled as one for an order requiring seriatim evidence.

First, Sutter Defendants contend that Plaintiffs are required to "establish what the bills imply to the insurers to whom Sutter presented them" in order to prove "the claim of falsity" pleaded by Plaintiffs. (MPA, p.2:9-10, p. 3:6-9.)

Sutter Defendants argue that this burden cannot be accomplished by generalized proof because "each entity is different, has different resources it uses to understand and challenge charges, and has a different history of investigating and challenging charges as part of its ordinary business functions." (Id., p.5:18-21.)

Sutter Defendants contend that the Plaintiffs must "be required to present evidence of what each insurer understood Sutter's bills to mean at the time they received the bills Plaintiffs allege to be false." (Id., p. 5: 10-14; p.6:1-3.)

2

Next, so as to avoid confusion by the jury, Sutter Defendants request that Plaintiffs provide this proof as to each insurer seriatim, insurer by insurer, so that the jury can hear and assess Plaintiffs' fraud claim as to each insurer in an orderly manner. Sutter Defendants contend that the Court's power to make such orders reside in Evidence Code section 310(a), 320, and Code of Civil Procedure section 608.

Sutter Defendants then also introduce the concept of "government knowledge" in connection with the proposition that the alleged victim's (insurance company's) knowledge of the facts that make the claim false negates two elements of a Penal Code section 550 violation, i.e. that (1) the Sutter Defendants' presented a false or fraudulent claim for payment for a health-care benefit; and/or (2) the Sutter Defendants knew the claim was false or fraudulent. (Id., p.9:14-23.)

In opposition, Plaintiffs argue that the IFPA does not require them, as an elemental burden of their claims, to present proof of the individual insurance company's subjective beliefs as to the challenged billings.

Plaintiffs also argue that the "government knowledge" defense (i.e., knowledge of the underlying facts negate the scienter required for certain violations of law) does not apply to an IFPA claim.

Plaintiffs further argue that Sutter Defendants' requested trial order would result in countless mini-trials exacerbating cost and complicating and prolonging trial.

The core issue presented on this motion is whether the IFPA requires that Plaintiffs present proof of the individual insurance company's *subjective beliefs* or *understandings* as to the challenged billings.  The Court finds that, under applicable law, Plaintiffs do not have such an elemental burden in their prima facie case under the IFPA.

California Insurance Code section 1871.7(b) provides in relevant part: (b) Every person **who violates any provision of … Section … 550** … of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance. The court shall have the power to grant other equitable relief, including temporary injunctive relief, as is necessary to prevent the transfer, concealment, or dissipation of illegal proceeds, or to protect the public. The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation." (Emphasis added.)

Given the contour of Plaintiffs' allegations, they must prove that Sutter Defendants violated a provision of California Penal Code section 550.

3

In that respect, California Penal Code section 550 provides in part that it may be violated as follows: "(a) …to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following: (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance. (2) Knowingly present multiple claims for the same loss or injury, including presentation of multiple claims to more than one insurer, with an intent to defraud. (5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim. (6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit. (7) Knowingly submit a claim for a health care benefit that was not used by, or on behalf of, the claimant. (8) Knowingly present multiple claims for payment of the same health care benefit with an intent to defraud. (b) It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following: (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact. (2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

In reviewing these various provisions, the Court does not agree that the issue of falsity, or any misleading information concerning any material fact, as to the time based 37x claims necessarily depends upon the *subjective* understandings of the insurance companies to whom the alleged fraudulent claims were presented. Further, a violation of Penal Code section 550 does not require consummation of the fraud or actual harm to the intended victim.  In other words, the standard elements of the tort of fraud such as actual and justifiable reliance and causation are not requisite to the violation of Penal Code section 550.  Instead, the focus is upon the defendants' knowledge and intent, and the nature of the alleged false or fraudulent claim or misleading information as to a material fact.  (See, e.g., CALCRIM 2000.)

Since the Court is not persuaded that Plaintiffs are required to present such individualized evidence of each involved insurance company's subjective understanding of the Sutter Defendants' billings in order to establish a *prima facie* violation of Insurance Code section 1871.7(b) via Penal Code section 550, Defendants request is not appropriate.  Finally, there is no basis to order any of the other requests made by Defendants in this motion styled as a request for the Court to order seriatim evidence.

4

## <u>3.  Sutter Defendants' Motion To Limit Case To Claims<br>Submitted To Insurance Companies</u>.

The pretrial motion of Sutter Defendants (joined by Multiplan, Inc. and Private Healthcare Systems, Inc. "PPO" Defendants) for an order limiting Plaintiffs' case to claims submitted to insurance companies is **GRANTED** as set forth below.

Sutter Defendants contend that the plain language of Insurance Code section 1871.7(b), and its substantial legislative history, limit that statute's application to only claims submitted to an "insurance company" pursuant to, or related to, "contracts of insurance."  Sutter Defendants thus argue that Insurance Code section 1871.7(b), and particularly the penalties prescribed therein, do not apply to alleged false or fraudulent claims submitted to Health Care Service Plans ("HCSPs") or self-funded ERISA plans, because such entities or plans are not insurance companies nor do they issue contracts of insurance.

Plaintiffs oppose the motion arguing the counter of each of Sutter Defendants' contentions, except perhaps with respect to whether a self-funded ERISA plan is an insurance company that issues contracts of insurance.  In general, Plaintiffs contend that the terms "insurance company" and "contract of insurance" as employed in Insurance Code section 1871.7(b) may be interpreted broadly to encompass any entity that is "engaged in the business of insurance" which would include HCSPs and ERISA plans.   Plaintiffs contend that this broad interpretation better effectuates the Legislature's goal to combat insurance fraud, specifically including fraud in the health care arena.

Thus, the question presented is: whether the terms "insurance company" and "contract of insurance" as employed in Insurance Code section 1871.7(b) do not include HCSPs and/or self-funded ERISA plans, or the agreements under which they provide their benefits and services.

Having considered the parties' arguments, the language of the statutes, and the relevant legislative history to the extent it assists in assessing the parties' competing interpretations, the Court is persuaded by the Sutter Defendants' arguments that the terms "insurance company" and "contract of insurance" as employed in Insurance Code section 1871.7(b) do not include HCSPs and/or self-funded ERISA plans.

5

### Meaning of "Insurance Company" in Insurance Code Section 1871.7(b).

When the California Legislature used the term "insurance company" in Section 1871.7(b), did it mean only a private insurance company holding a valid outstanding certificate of authority from the Insurance Commissioner, or may that term be construed to reach every entity that can be characterized as "engaged in the business of insurance?"

More specifically, when the Legislature used the term "insurance company" did it also intend to mean a "health care service plan" as defined under subdivision (f) of Section 1345 of the Health and Safety Code, engaged in providing, arranging, paying for, or reimbursing the cost of personal health services under medical and hospital service agreements or membership contracts?

Having considered the statutory language in question, the context of the statute, the parties' arguments, and the rules of statutory interpretation, the Court finds that the Legislature's use of the term "insurance company" in Section 1871.7(b) was not intended to include a health care service plan.

The fundamental task of statutory construction is to ascertain legislative intent so as to effectuate the purpose of the law. (Code Civ. Proc. §1859; *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal. 3d 245, 268.)   Thus, determining legislative intent is said to be the fundamental, or cardinal, rule of statutory construction. (*Tyrone v. Kelley* (1973) 9 Cal. 3d 1, 10-11; *Los Angeles Taxpayers Alliance v. Fair Political Practices Com.* (1993) 14 Cal. App. 4th 1214, 1219.)  The rules of statutory construction established in the decisional law are all basically guides for courts to use in determining that intent. (*Kinder v. Pacific Public Carriers Co-op, Inc.* (1980) 105 Cal. App. 3d 657, 664.)

To achieve these high goals, statutory interpretation involves a three-step analysis. First, a court should examine the actual language of the statute. In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning unless, of course, the statute itself specifically defines those words to give them a special meaning. If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. (*Herman v. Los Angeles County Metropolitan Transportation Auth.* (1999) 71 Cal.App.4th 819, 825-826; see *State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 446; 450 [interpreting Cal. Ins. Code §1871.7(b); *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 543] However, if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. *(Herman v. Los Angeles County Metropolitan Transportation Auth.*, supra, 71 Cal.App.4th 819, 825-826.) The final step which should only be taken when the first two steps have failed to reveal clear meaning is to apply

6

reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable (Id. citing *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal. App. 4th 1233, 1238-1240.)  In the end, the primary purpose of statutory interpretation is to ascertain and effectuate the Legislative intent. (*In re Littlefield* (1993) 5 Cal.4th 122, 130.)

In construing a statute under the first step, the court's function is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted, or to omit what has been inserted. (Code Civ. Proc. §1858.)  The courts may not alter the words of a statute or insert qualifying provisions to accomplish a purpose or assumed intention that does not appear either on the statute's face, or from its language, or from its legislative history. (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002; *City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 793.)  "'While every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose.'" (Arden Carmichael, Inc. v. County of Sacramento (2001) 93 Cal.App.4th 507, 516.)

Words in a statute should, unless otherwise clearly indicated, be given their usual, ordinary, commonsense meaning. *(Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal. 3d 245, 268; *Hoschler v. Sacramento City Unified Sch. Dist.* (2007) 149 Cal. App. 4th 258, 263-264, 266.)  That meaning is to be ascertained and the words interpreted in the sense in which they would have been understood at the time of the statutory enactment. (*People v. Cruz* (1996) 13 Cal. 4th 764, 782.)

In general, a word that has a particular meaning in one part of a law should be given the same meaning in other parts of the same law. However, this axiom of statutory construction does not control when the word is qualified by different modifiers. (*Ste. Marie v. Riverside County Reg'l Park & Open-Space Dist.* (2009) 46 Cal. 4th 282, 289-290.) Terms ordinarily possess a consistent meaning throughout a statute. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 960.)

It is also a generally accepted tenet of statutory construction that the same words used in different statutes that are *in pari materia* are to be given the same meaning. (See *Outdoor Resorts etc. Owners' Assn. v. Alcoholic Beverage Control Appeals Bd.* (1990) 224 Cal.App.3d 696, 701.)

The Insurance Code section 5, provides that unless "the context otherwise requires, the general provisions hereinafter set forth shall govern the construction of this code." Insurance Code section 22 defines "Insurance" as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Section 41 then defines the "Scope of Code" as follows: "All insurance

in this State is governed by the provisions of this code." However, HCSPs are expressly exempt from the provisions of the Insurance Code. (Cal.Ins.Code §740.) Given the fact that HCSPs are generally excluded from the coverage of the Insurance Code, and exempted from the jurisdiction of the Commissioner, it is not reasonable to then interpret Section 1871.7(b) contrary to this general scheme and to hold that HCSPs are nonetheless implicitly included therein.

In this respect, the Court has found most persuasive the fact that the terms "insurance company" and "contract of insurance" are terms that have been used by the Legislature to expressly specify insurance companies and contracts under the jurisdiction of the Commissioner and DOI, and conversely to distinguish same from health care service plans and health maintenance organizations, and membership contracts. (See e.g. Cal.Gov. Code §22764 [insurance company distinguished from health care service plan, and insurance policies or contracts distinguished from membership contracts.)

The Court is not persuaded that the California Legislature intended the specific term "insurance company" and its express linkage to the prescribed penalty in Insurance Code section 1871.7(b) to be interpreted as a catch-all for all entities that engage in business that may have characteristics or indicia of insurance or otherwise provide some form of indemnification of risk. While expanding the language of Section 1871.7(b) to encompass entities that are not otherwise defined in the law as "insurance companies" may better effectuate the Legislature's broader public policy interests in stemming the types of fraud claims at issue, it has not done so with the existing language of that section.

The Court's conclusion is equally applicable to self-funded ERISA plan, if not more so in light of federal law prohibiting the characterization of such plans as insurance or insurers for purpose of state law. (29 U.S.C. §1144(b)(2)(B).)

### 4. Sutter Defendants' Motion to Strike Plaintiffs' Jury Demand

The Sutter Defendants' motion (joined by Multiplan, Inc. and Private Healthcare Systems, Inc., "PPO" Defendants) for an order striking the Plaintiffs' jury demand is **DENIED.**

Sutter Defendants contend that the Plaintiffs' claims for civil penalties and assessments, in addition to injunctive and declaratory remedies, is equitable in gist, nature and history, and therefore Plaintiffs are not entitled to a jury trial and the matter is instead to be tried in its entirety to the Court in equity. Further, Sutter Defendants contend that the Plaintiffs statutorily waived the right to jury trial pursuant to Code of Civil Procedure section 631(f)(5), by failing to timely pay the jury fee set forth in Code of Civil Procedure section 631(b).

Plaintiffs oppose the motion arguing that the claims for civil penalties and assessment under the relevant statute is legal in gist, nature and history, and therefore Plaintiffs are entitled to a jury trial on those claims.  Plaintiffs concede the late filing of jury fees, and request that the Court in its discretion allow trial by jury pursuant to Code of Civil Procedure section 631(g).

Being an issue of first impression, this Court thus must evaluate what the cases describe as the gist of the action described in the statute in question, in light of the zealous guarding of the right to jury where one exists, and in light of the words of the statute itself, the statutory scheme and the legislative history, including the objects to be achieved, as more particularly described below. (*State of California v. Altus Finance* (2005) 36 Cal. 4th 1284,1296.)

The following informs this Court's decision.

First, there is no case directly on point, i.e., whether the IFPA requires a jury trial or not.

Second, the relevant statute is silent on whether the finding of a violation of Penal Code section 550 should be done by the Court or a jury, as well as whether a court or jury should initially determine the dollar amount of the penalty and doubling or tripling of assessments.  What is clear is that the Court has the right to grant "other" equitable relief, and that it should act as on a check on any penalties, less they become punitive and preclude criminal prosecution.

Third, the juxtaposition of certain wording, and the use of other words, creates some ambiguity in the statute as to the role of judge and jury, but these seeming ambiguities can be dispelled and the intent of the statute harmonized with the wording.

Fourth, the cases discussing qui tam actions do not establish the legal precedent that all qui tam actions are either jury trials or otherwise.  Rather, these cases establish that whether a specific qui tam action is one requiring a jury trial or a court trial is dependent upon the nature of the claim and right and remedy sought.

Fifth, the cases that are available to the parties and the Court establish general principles or guidelines to be used in determining whether a particular statute does or does not provide for a jury trial, and emphasize the need for appropriate application of constitutional law and statutory interpretation rules of law to the unique language at issue.

Sixth, the legislative history provides no guidance on the issue.

## The Constitutional Right to Jury Trial

The California Constitution declares that trial by jury is an inviolate right secured to all persons. (Cal. Const., art. I, §16.) The right to trial by jury guaranteed by the Constitution is the right as it existed at common law in 1850, when the California Constitution was first adopted. (*Franchise Tax Bd. v. Superior Court of San Francisco* (2011) 51 Cal. 4th 1006, 1010; *Cornette v. Dept. of Transportation* (2001) 26 Cal. 4th 63, 75-76.) Thus, in the absence of a statute that specifically provides for a jury trial, the right to a trial by jury extends only to cases involving actions for which there was a common-law right to a jury in 1850. (*C & K Eng'g Contractors v. Amber Steel Co.* (1978) 23 Cal. 3d 1, 8; *Interactive Multimedia Artists, Inc. v. Superior Court* (1998) 62 Cal. App. 4th 1546, 1551.) The United States Constitution guarantees the right to trial by jury in civil actions at common law in which the amount in controversy exceeds $20. (U.S. Const., amend. VII.)  This right however is not binding on the states. (See *Rankin v. Frebank Co.* (1975) 47 Cal. App. 3d 75, 92.) Yet, state courts are bound by the federal constitutional rule that a jury trial is required before serious contempt fines may be imposed, if those contempt fines are criminal rather than civil in nature. (*United Mine Workers v. Bagwell* (1994) 512 U.S. 821, 114 S. Ct. 2552, 129 L. Ed. 2d 642, 658-659.)

"The right to a trial by jury is fundamental and 'should be zealously guarded by the courts.' [Citations.] 'In case of doubt … , the issue should be resolved in favor of preserving a litigant's right to trial by jury … .'" (*Mendoza v. Ruesga* (2008) 169 Cal. App. 4th 270, 283-284 [right to jury trial in immigration consultants act case] citing *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 411.)  "'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' " (*Beacon Theatres v. Westover* (1959) 359 U.S. 500, 501; 79 S. Ct. 948.)

Whether an action is one in which there was a common-law right to a jury in 1850 is a historical question, a fact to be ascertained like any other social, political, or legal fact. The common law at the time the California Constitution was adopted includes not only the unwritten law, but also the written statutes enacted by Parliament. (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal. 2d 283, 286-287; *County of Sutter v. Davis* (1991) 234 Cal. App. 3d 319, 322-323.)  For example, at common law, there was a right to a jury trial if exemplary, punitive, or vindictive damage claims were alleged. (*Looney v. Superior Court* (1993) 16 Cal. App. 4th 521, 538; *Rowe v. Superior Court* (1993) 15 Cal. App. 4th 1711, 1719.)

Thus, the question of a party's right to a jury trial must be approached in the context of 1850 common-law pleading. (*Franchise Tax Bd. v. Superior Court of San Francisco* (2011) 51 Cal. 4th 1006, 1010.)  If the "gist of an action," as framed by the pleadings,

10

raises issues that would have been triable at law in 1850, a trial by jury is a matter of right and is not solely dependent upon the type of relief sought. (*Interactive Multimedia Artists, Inc. v. Superior Court* (1998) 62 Cal. App. 4th 1546, 1551). However, as a general rule a party is not entitled to a jury trial in an equitable action; if the action is addressed to equity powers of the court, the matter ordinarily is one for the trial court alone. (*Interactive Multimedia Artists, Inc. v. Superior Court* (1998) 62 Cal. App. 4th 1546, 1551.)

The entitlement to a jury trial depends on whether an action is legal or equitable in nature. (*Franchise Tax Bd. v. Superior Court of San Francisco* (2011) 51 Cal. 4th 1006, 1010; *Mendoza v. Ruesga* (2008) 169 Cal. App. 4th 270, 283-284 [right to jury trial in immigration consultants act case]; *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal. App. 4th 1489, 1512-1514 [no jury trial in interpleader action].)

The "gist of the action" refers to the nature of the rights involved and the facts of the particular case. (See *C & K Eng'g Contractors v. Amber Steel Co.* (1978) 23 Cal. 3d 1, 9.) In classifying a particular action as legal or equitable, the court looks to its substance, i.e., the nature of the rights at issue and the remedy sought. (See e.g., *Jogani v. Superior Court* (2008) 165 Cal. App. 4th 901, 905 [determining quantum meruit is legal claim].)

The question of whether a party is entitled to a jury trial for a cause of action that did not exist in 1850 is also determined by application of the "gist of the action" rule. (*Franchise Tax Bd. v. Superior Court of San Francisco* (2011) 51 Cal. 4th 1006, 1010; *Martin v. Los Angeles County* (1996) 51 Cal. App. 4th 688, 694-696.)

The legal or equitable nature of a cause of action ordinarily is determined by the type of relief sought. (*C & K Eng'g Contractors v. Amber Steel Co.* (1978) 23 Cal. 3d 1, 9; *Stell v. Jay Hales Development Co.* (1992) 11 Cal. App. 4th 1214, 1221.)  A cause of action seeking damages usually is a legal cause of action. (*Raedeke v. Gibraltar Sav. & Loan Ass'n* (1974) 10 Cal. 3d 665, 672.)

Having considered the parties' extensive points and authorities and the supplemental chart pleading, the Court is persuaded that the "gist of the action" in this matter is legal and that Plaintiffs are entitled to a jury trial upon those legal claims.

As noted in *Mendoza*, the gist of the fraud claims here are analogous to the legal action to combat fraud that existed in 1850. (*Mendoza v. Ruesga* (2008) 169 Cal. App. 4th 270, 284-285 citing *Buzard v. Houston* (1886) 119 U.S. 347, 352–353 [30 L. Ed. 451, 7 S. Ct. 249] [for the proposition that in determining whether a jury trial right existed at common law as of 1791, for purposes of a right to trial under the federal constitution's Seventh Amendment, the United States Supreme Court concluded a fraud action for damages was generally enforced at law rather than equity].)   Similarly, the issues

surrounding fraud arising out a contract of insurance and damages caused thereby is historically and by California statute also a jury issue. (Art. I, sec. 16, California Constitution; see also Code of Civil Procedure section 592.)

The Court notes the *Mendoza's* observation in dicta that the trial court in that matter correctly determined that it, versus a jury, should consider and award civil penalties under California's Immigration Consultants Act (ICA) (Bus. & Prof. Code, § 22440 et seq.), while nonetheless finding that the plaintiffs were entitled to a jury trial on their damages under the ICA. (*Mendoza v. Ruesga*, *supra*, 169 Cal. App. 4th p. 285, fn. 9.) The appellate court's conclusion *was not* premised upon the ground that all civil penalties must be tried and assessed by the trial court, even if the gist of the action is otherwise legal.  Instead, the court's conclusion was compelled by the express dictates of the ICA which provides that the "***court*** shall impose a civil penalty for each violation of this chapter." (Cal.Bus.& Prof. Code § 22445(a)(2).)(Emphasis provided)  No such express direction is provided in the IFPA for the Court to be the one to impose a civil penalty.  Rather, by plain reading it reserves to this Court the right to consider equitable factors to reduce penalties if they potentially appear punitive and run afoul of possible double jeopardy (i.e., the defendant is prosecuted criminally as well or civilly or could be, or will be etc., as discussed in the parties papers), after consideration of various equitable factors. Given the "gist" of the action as one sounding in fraud, a jury trial is both required and appropriate, at a minimum, with respect to whether Defendants violated the IFPA.

Defendants' referral in its papers to the purposes of the IFCA statute here as simply "preventative," i.e., looking to deter future conduct, is too limited and inaccurate and does not support its conclusion that the court should be tasked with considering statutory penalties in the first instance. Rather, the Legislature expressly has provided that the claims at issue are intended to be "remedial" for the specific purpose of combating insurance fraud. (See, Cal. Ins. Code §1871.7(c) ["The penalties set forth in subdivision (b) are intended to be remedial rather than punitive,.."]; Cal. Ins. Code §1871["This chapter is intended to permit the full utilization of the expertise of the commissioner and the department so that they may more effectively investigate and discover insurance frauds, halt fraudulent activities, and assist and receive assistance from federal, state, local, and administrative law enforcement agencies in the prosecution of persons who are parties in insurance frauds."]

The fact that the statute describes the penalties as "remedial" does not, however, in and of itself, provide meaningful direction.  The term "remedial" has been used to describe at least two different statutory schemes, one of which requires a jury trial on penalties and the other of which does not.   (*DiPirro v. Bondo Corporation* (2007) 153 Cal. App. 4th 150, 180, citing to *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 461-462, stating that despite being a "remedial" statute, Proposition 65, the California Safe

Drinking Water and Toxic Enforcement Act of 1986 Health & Safety Code §§25249.5-25249 does not grant any statutory right to a jury trial in enforcement actions; *Suman v. Superior Court* (1995) 39 Cal. App. 4th 1309, 1317-1318, holding that the Song-Beverly Consumer Warranty Act, and specifically Civ. Code §1790(c)) is manifestly a remedial measure intended for the protection of the consumer and provides a right to jury trial for those charged with its violation and facing penalties).   Rather, it is the express statement in Cal. Ins. Code §1871 cited supra that this Court finds persuasive as tending in favor of a jury trial in light of the "gist" of the action for fraud and its historical relationship to jury trials.

Further, Defendants comparisons to Proposition 65 and the California Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code sections 25249.5-25249.13), and the cases thereunder, are not on point with Defendants position because of the fundamental differences in the purposes and history of the two statutory schemes. The appellate court in *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4[th] 150, 182-186 examined the Health & Safety Code statutes in question and described then as "informational and preventative rather than compensatory in its nature and function."  It further stated that the civil penalties provided thereunder "do not grow out of a claim for moneys due and owing or for personal harm or property damages that have resulted from discharge of pollutants or other toxic chemicals, which are actions triable by a jury at common law."  Rather, the purpose of that act is "to facilitate the *notification* of the public or potentially harmful substances, so informed decisions may be made by consumers on the basis of disclosure…An award of civil penalties under the Act is a statutory punitive exaction determined on the basis of equitable principles, designed to deter misconduct and harm, not to compensate the plaintiff for actual damages sustained." (*Id*, at pgs. 182-183.)

*DiPirro* does cite, in footnote 22 on page 183, to *Tull v. United States*, 481 U.S. 412, 417-422, 426-427 (1987), where the court therein determined that the "gist" of a claim against a real estate developer for the unlawful dumping of fill on wetlands in violation of two federal and state water acts warranted a jury trial on defendants "liability" for the illegal dumping, but found that the trial court and not the jury should determine the amount of penalty, if any, again, based on the specific language and purposes of the statutes in question.

Returning again to the language of the statute in question here, Ins. Code Section 1871.7(b), and mindful of the rules of statutory construction referenced elsewhere in these tentative rulings (see pages 5-7 above), it is by express statement not punitive but is remedial of actual fraud that is also actionable as a crime and, arguably a cause of action for civil fraud or misrepresentation by contracting parties.   It requires at a minimum that a jury determine whether or not the defendants engaged in criminal fraud, i.e., violated a section of Penal Code section 550; the *number* of fraudulent claims actually presented to an insurance company; and the actual amount of each claim for

13

compensation pursuant to a contract of insurance. These are the kinds of claims the law requires that a jury consider and pass judgment on.

The question then becomes who considers/determines the between $5,000 and $10,000 "penalty" and whether the called for assessments based on the amount of the claim(s) submitted pursuant to a contract of insurance are doubled or trebled?

What is clear is that the "court," which is specifically mentioned in a subsequent section, has the power to grant "other equitable relief" to protect the public if appropriate (Ins. Code §1871.7(b)), and to insure that the amount of penalties does not become punitive. Specifically, by utilizing its equitable powers and considering the various enumerated factors (i.e., the goals of disgorging unlawful profit, restitution, compensating the state for costs of investigation and prosecution, and alleviating the social costs of increased insurance rates due to fraud (Ins. Code §1871.7(c)), it can reduce the amount of the award.

It seems somewhat incongruous that if the court were the original decision maker as to the amount of the penalties and assessments in the first instance that it would select from a range, it should then be directed to examine the same equities and legal issues only later to reduce it.  Rather, if the court were the one in the first instance to assess the penalties and assessment in equity, all equitable and other policy considerations, etc., would come into play in the very first instance. The statute thus seems to set up the circumstances where the jury makes those decisions in the first instance, and then the court examines/modifies/reduces/affirms based on the enumerated equitable reasons only later.

*Tull v. United States* (1987) 481 U.S. 412, is helpful in one sense, but not in others  By analogy, it affirms that a jury should be empaneled to determine whether the defendants engaged in criminal fraud.  *Tull's* holding is that there exists in federal constitutional law a right to a jury trial *on liability* for civil penalties sought by the government under the Clean Water Act (33 USCS 1311, 1344, 1362(7)) because the act punishes culpable individuals who illegally dump fill on wetlands.  In its analysis, the high court holds that the penalties under the act, which are available along with other equitable relief, are akin to the 18th-century action in debt, which historically provided for a jury trial. However, the same court holds that the determination of the amount of the penalty is not an essential function of a jury trial under federal common law.  It continues that Congress therefore is free to assign that task to a court, which the Supreme Court found was so assigned based on the act's history. Defendants attempt to distinguish *Tull* on that portion of the decision finding a right to a jury trial on liability, arguing that California law regarding debt collection is to the contrary.  This misses the point.  The statute before us is based on the common law crime of fraud, and California and federal law are the same on this point:  a jury trial on liability is required.  The real issue is, does the statute say who assigns the penalty amount?

As stated above, there apparently is nothing in the legislative history of IFPA that assigns the task of assessing penalties to the court in the first instance, in that the parties have not pointed to any specific language in their briefing. For the reasons stated above, the Court finds that the jury shall be tasked with finding liability, if any, for

14

a Penal Code violation, the number of claims made under contracts of insurance, and the dollar amount of the claims.  It shall also be tasked for assigning appropriate penalties and assessments in the first instance, subject to reduction by the court based on the factors enumerated in the statute.

The lack of specificity in the section as to what a jury should consider in assessing the penalties can be appropriately addressed by jury instruction in light of the overall statutory scheme and purpose.  (*Suman v. Superior Court of Los Angeles Co.*, (1995) 39 Cal. App. 4th 1309, 1317-1323.)  The Court will work with counsel on the instructions at the appropriate time.

Plaintiffs are entitled to their request for a jury trial under the statute.

## Relief From Waiver

The court may, in its discretion on just terms, allow a trial by jury although there may have been a waiver of that right. (Code Civ. Proc. § 631(g).)  The purpose of Code Civil Procedure section 631 is to provide a means by which the parties may waive a jury, not to impose conditions constituting an irrevocable waiver, and the trial court has discretion to allow a jury trial despite a prior waiver. *(Massie v. AAR W. Skyways, Inc.* (1992) 4 Cal. App. 4th 405, 411.)  Doubt as to whether there has been a waiver of jury trial or concerning the propriety of granting relief from the waiver, should be resolved in favor of the party requesting trial by jury because of the constitutional guarantee of the right to a jury trial. (See, *Massie v. AAR W. Skyways, Inc.* (1992) 4 Cal. App. 4th 405, 411; see also *Oakes v. McCarthy Co.* (1968) 267 Cal. App. 2d 231, 264-265.)

In exercising its discretion, a trial court may consider diverse factors: "[Delay] in rescheduling the trial for jury, lack of funds, timeliness of the request and prejudice to all the litigants." (*McIntosh v. Bowman* (1984) 151 Cal.App.3d 357, 363; *Day v. Rosenthal* (1985) 170 Cal. App. 3d 1125, 1176,) The court may also consider, "prejudice to . . . the court, or its calendar" (*Bishop v. Anderson* (1980) 101 Cal.App.3d 821, 824), the reason for the demand, i.e., whether it is merely a "pretext to obtain continuances and thus trifle with justice" (*Cowlin v. Pringle* (1941) 46 Cal.App.2d 472, 476), whether the parties seeking the jury trial will be prejudiced by the court's denial of relief (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 511).

The parties have been preparing for and battling against the right to a jury trial since the inception of this case.  Having considered these factors, the Court finds that they weigh in favor of granting relief from waiver, and permitting trial by jury upon the legal claims.

# EXHIBIT B

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 10 2019

Sherri R. Carter, Executive Officer/Clerk
By Veronica Solis, Deputy

STATE OF CALIFORNIA V. ENCINO HOSPITAL MEDICAL CENTER, et al.
BC 641254
June 10, 2019

ORDER ON MOTIONS

On June 4, 2019, the Court took under submission the following motions:

1. Prime/Encino Hospital defendants' Motion for Summary Judgment/Adjudication;
2. SRCC defendants' Motion for Summary Judgment/Adjudication;
3. Plaintiffs' Motion for Summary Judgment/Adjudication as to the Prime defendants;
4. Plaintiffs' Motion for Summary Judgment/Adjudication as to the SRCC defendants;
5. West Coast Wellness' Motion for Summary Adjudication.

As the Court advised the parties at the hearing, these motions raise many of the same issues. Moreover, as to several issues, the parties conceded that there are no material facts in dispute. The Court agrees and has determined that there are several issues which involve pure questions of law which and which are now ripe for decision.

Pending the possibility of a settlement, the Court will hold motion #5 under submission.

Before turning to the merits of motions one through four, the Court notes that the remaining parties submitted some evidentiary objections and some proposed orders. The Court has ruled on those orders which were properly submitted.

As to motion #1, plaintiffs' objections were ruled upon. However, the vast majority of the Prime/Encino objections were not in compliance with CRC 3.1354c which requires that the objectionable material be specifically set forth, without requiring reference to other documents in an extraordinarily extensive record. It is not the job of the trial court to "rummage through the papers to construct or resuscitate" a party's case. *Collins v. Hertz*, 144 Cal. App. 4th 64, 75 (2006). Nor is it proper for Prime/Encino to object to "additional material facts" in a separate statement. Rule 3.1354 allows only for "objections to evidence." The objections of SRCC regarding motion #2 suffer from the same defects and are also overruled.

A. Licensing Issues

It is not disputed that the California Department of Public Health ("DPH") licensed Encino Hospital as a General Acute Care Hospital ("GACH"). However, Encino was not

1

licensed as a Chemical Dependency Recovery Hospital ("CDRH").   It is also not in dispute that the SRCC defendants had no license from DPH.

Plaintiffs' theory of the case is that Encino was required to have obtained a CDRH license for the substance abuse treatment services it provided on its third floor.   Plaintiffs also argue that SRCC, which managed the third floor program, should also have obtained a CDRH license. Because the requisite licenses were not obtained, plaintiffs argue that all claims submitted by these entities to insurance companies for reimbursement were fraudulent.

As the briefing in this case makes abundantly clear, the statutes and regulations at issue are complex and somewhat confusing.  However, the Court agrees with Encino's interpretation of the Health & Safety Code, and the relevant regulations, that Encino did not need supplemental approval from DPH to set up its detox program on the third floor. *See* H & S Code 1250(d)(1), (2) ("chemical dependency recovery services provided pursuant to this subdivisions shall not require a separate license"); H & S Code 11217(h); 22 C.C.R. 70301, et seq. (not listing detox services as requiring separate supplemental service approval); 22 C.C.R. 79221(d) (patients requiring medical detoxification services may be treated in a general acute care hospital);

On the other hand, the Court concludes that SRCC was "operating,"managing" and/or "conducting" a "health facility," which in turn is defined, *inter alia*, as a "facility" or "place" "operated for the diagnosis, care, prevention and treatment of human illness, physical or mental." H & S Code 1250.  As such, SRCC was required to be licensed.  H & S Code 1253.

The operative Second Amended Complaint ("SAC") charges Encino and SRCC with aiding and abetting and conspiring with each other to submit fraudulent claims to California insurance companies.  On this basis, the next issue is whether Encino and SRCC had the requisite intent to defraud.  Based on the evidence submitted there are material question of fact going to these parties' intent, including but not limited to the testimony of certain officials, *e.g.*, Stone and various written documents, *e.g.*, the proffered "AFL's".[1]

The Court has considered, but now rejects, defendants' argument that the Relator was not the original source of the licensing allegations.   This is so because, as plaintiffs argue, the licensing information which was publicly available was insufficient to put the reader on notice of

---

[1] While plaintiffs lodged evidentiary objections to these AFL's, plaintiffs' counsel at the hearing assumed that they were authentic but argued that they could not be relied upon by defendants. The Court disagrees.  If properly introduced at trial, the AFL's could be relevant as to defendants alleged intent to defraud.

the nature and scope of the fraud alleged in this case.

Accordingly, plaintiffs' Motions for Summary Judgment based on the licensing issues are denied. SRCC's Motion for Summary Adjudication is denied as to Issue 1. Encino/Prime's Motion for Summary Adjudication is denied as to Issues 1, 2 and 3.

B. The Relator is not the Original Source as to the Allegation of Excessive and Improper Urine Drug Testing.

Before plaintiffs filed the SAC, allegations of improper urine testing were raised in the Florida federal court case of *National Lab, LLC v. UnitedHealth Group, Inc.* The Relator has admitted that she tracked the proceedings in that case before the SAC was filed. The Relator conducted no independent investigation of the urine testing conducted by the defendants in the instant case.

SRCC argues that Relator is not the original source of the allegations regarding improper urine testing and, therefore, this Court does not have jurisdiction of these claims per Ins. Code 1871.7(h)(2)(A). Plaintiff's Opposition to the SRCC motion does not address this argument. However, at the hearing, plaintiffs' counsel argued that once the Insurance Commissioner intervened in this case, the so-called "original source" bar does not apply.

The Court does not agree. A fundamental tenet of statutory construction is to give meaning to the plain words of the statute. Ins. Code 1871.7(h)(2)(A) specifically refers to the "Attorney General," not the "government" and certainly not the Insurance Commissioner. Moreover, as SRCC's counsel pointed out, the legislature has examined this statute more than once in recent years and has chosen not to modify this provision. The Court declines to conclude that this was an "oversight."

Summary adjudication is granted as to SRCC's Issue 4.

C. The Insurance Commissioner's Jurisdiction is Limited to Claims Made to Insurance Companies in California.

SRCC also argues that Ins. Code 1871.7(b) limits the jurisdiction of the Insurance Commissioner to claims submitted to California insurance companies, and not to claims submitted to out of state insurance companies or to non-insurance health care payors.

Plaintiffs advance several arguments in response. They first claim that nothing in the

statute "contains any geographical language whatsoever." This simplistic analysis is rejected. The Court is aware of no statute or case which holds that a department of our state's executive branch has some sort of nationwide jurisdiction to investigate conduct occurring in another state.

Plaintiffs next argue that Ins. Code 1871.7 and Penal Code 550 taken together have a broad remedial reach. That may be so, but the Insurance Commissioner is bringing this action pursuant to 1871.7(a) and (b). And those provisions specifically refer to "contracts of insurance" and "claims presented to an insurance company." While 1871.7(b) incorporates Penal Code 550, that cannot be read to give the Insurance Commissioner jurisdiction over fraud not having to do with insurance, especially that occurring in another state.[2]

Defendants are also correct that HCSPs and HMOs are regulated by the Department of Managed Health Care and that ERISA plans are exempt from state laws regulating insurance. Plaintiffs' case authority on these points is not persuasive.

Summary adjudication is granted as to SRCC's Issue 9.

D. Prime's Remaining Issues

There are material issues of fact regarding the Prime defendants "actual knowledge" of SRCC's "running/capping/steering" scheme. Summary adjudication is denied on Issue 4.

Plaintiffs have withdrawn their so-called "patient specific allegations," making Issue 5 moot.

E. SRCC's Remaining Issues

There are material issues of fact in dispute and summary adjudication is denied on Issues 2, 3, 5, 6 and 7. Plaintiffs failed to oppose Issue 8 which appears to be a "patient specific allegation." Summary adjudication is moot on Issue 8.

Accordingly, should this case not settle, trial will proceed on the issues set forth above.

IT IS SO ORDERED.

---

[2] To adopt plaintiffs' expansive reasoning would permit the Insurance Commissioner to investigate fraud on a freeway expansion project run by the California Department of Transportation or, even more attenuated, a road project in Atlanta, Georgia.

4

IT IS FURTHER ORDERED that Encino/Prime lodge [proposed] Findings of Fact and Conclusions of Law, consistent with this Order, by June 19, 2019.

Notice by Encino/Prime.   .

5