1  NIALL P. MCCARTHY (SBN 160175)
   nmccarthy@cmplegal.com
2  JUSTIN T. BERGER (SBN 250346)
   jberger@cmplegal.com
3  BETHANY HILL (SBN 326358)
   bhill@cmplegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
5  840 Malcolm Road
   Burlingame, CA 94010
6  Telephone:  (650) 697-6000
   Facsimile: (650) 697-0577
7
   *Attorneys for Relator STF, LLC*
8

9  GISELLE J. JOFFRE (admitted *pro hac vice*)        CAROLYN F. McNIVEN, (SBN 163639)
   gjoffre@foleyhoag.com                              mcnivenc@gtlaw.com
10 CAROLINE S. DONOVAN (admitted *pro hac vice*)      JEFFREY P. PALMER (SBN 229314)
   cdonovan@foleyhoag.com                             palmerj@gtlaw.com
11 ANTHONY D. MIRENDA (admitted *pro hac vice*)       BRIAN Q. HALL (SBN 318209)
   amirenda@foleyhoag.com                             hallbri@gtlaw.com
12 JOANNA MCDONOUGH (admitted *pro hac vice*)         **GREENBERG TRAURIG, LLP**
   jmcdonough@foleyhoag.com                           4 Embarcadero Center, Suite 3000
13 KELLY CAIAZZO (admitted *pro hac vice*)            San Francisco, CA 94111
   kcaiazzo@foleyhoag.com                             Telephone: (415) 655-1270
14 **FOLEY HOAG LLP**                                 Facsimile: (415) 707- 2010
   Seaport West
15 155 Seaport Boulevard                              *Attorneys for Defendants Crescendo Bioscience,*
   Boston, MA 02210-2600                              *Inc. and Myriad Genetics, Inc.*
16 Telephone:    (617) 832-1000
   Facsimile:    (617) 832-7000
17
   *Attorneys for Defendants Crescendo Bioscience,*
18 *Inc. and Myriad Genetics, Inc.*

19                     **UNITED STATES DISTRICT COURT**
                       **NORTHERN DISTRICT OF CALIFORNIA**
20

21 | **UNITED STATES OF AMERICA** *ex rel.* **STF, LLC**, an organization**; STATE OF CALIFORNIA** *ex rel.* **STF, LLC**, an organization, | |
   |---|---|
22 | | |
   | | CASE NO.: 16-cv-02043-TSH |
23 | Plaintiffs, | |
   | | **JOINT STATEMENT PURSUANT TO DISCOVERY STANDING ORDER FOR MAGISTRATE JUDGE THOMAS S. HIXSON** |
24 | v. | |
25 | **CRESCENDO BIOSCIENCE, INC.**, a Delaware corporation; and **MYRIAD GENETICS, INC.**, a Delaware corporation, | |
26 | | |
27 | Defendants. | |
28

**CRESCENDO BIOSCIENCE, INC. AND MYRIAD GENETICS, INC.'S POSITION**

This is not a routine discovery dispute. Defendants Crescendo Bioscience, Inc. ("Crescendo") and Myriad Genetics, Inc. ("Myriad") come before the Court because of a series of discovery transgressions by the Relator, STF, LLC ("STF"), only discovered last week that go to the very heart of this matter and that fundamentally transform Crescendo and Myriad's approach to defense. For the reasons that follow, Defendants request that the Court order STF to remediate its discovery failings as detailed below and the scheduling order deadlines be extended for Defendants only for the limited purpose of obtaining this evidence.

Relator and its counsel withheld until March 5, 2021, a mere ten days before the end of fact discovery, information concerning an undercover FBI investigation launched in 2015 that produced information ultimately used by Relator to support its allegations in the original complaint filed in April of 2016. On March 5, 2021 in her deposition, Dr. Felice Gersh, 50% owner of Relator, testified that she served as a confidential informant for the FBI and that the FBI instructed her to enter into a Specimen Processing Agreement ("SPA") with Crescendo and to order its Vectra tests. Further she testified that while her with representations in the SPA were false, she entered the agreement at the instruction of FBI Agent Jon Habben. Dr. Gersh testified that prior to becoming a confidential informant and working for the FBI, she had no knowledge of Crescendo's Vectra test and had not once ordered the test for her patients. Relator's belated and seismic disclosure concerning the undercover operation to obtain information at the instruction of the FBI can only have been intentional with respect to timing, and has prejudiced Defendants' ability to obtain information essential to its defense by the March 15 deadline.

Relator concealed the FBI investigation on multiple occasions during discovery: (1) in interrogatory responses dated August 27, 2020 (Ex. 1), Relator failed to identify Agent Habben (or California State Agent Vladislav Mikulich, together the "Agents") as individuals with information relevant to the complaint; (2) Relator failed to include responsive emails between Gersh and the Agents in its August 2020 document production despite Dr. Gersh having provided those emails to her Counsel in 2016; (3) Relator's counsel represented on December 14, 2020 that its document production was complete despite not including any emails concerning the Agents (Ex. 2); and (4) to the extent Relator's counsel's position was that Agent communications were protected by some unidentified privilege, Relator failed to include any communications between Dr. Gersh and Agents or counsel and Agents on its privilege log produced on December 14, 2020 (Ex. 3). The emails were responsive not only to Rule 34 requests served on Relator (Ex. 4), but also to individual document subpoenas served on Dr. Gersh's medical practice and Mr. Robert Tygenhof (Gersh's husband and a key administrator in her practice) (Exs. 5 and 6). Relator's Counsel also represents Dr. Gersh's practice as well as Gersh and Tygenhof individually.

On March 2, one day before the Tygenhof deposition and three days prior to the Gersh deposition, Relator produced some emails between Dr. Gersh and the Agents. But those emails do not include emails concerning the alleged investigation by the FBI into Crescendo specifically. To date, no communications concerning the Agents and the Crescendo investigation have been produced or identified in a privilege log.

Defendants have been prejudiced by the concealment (by Relator, Gersh, Tygenhof and her practice) of information concerning the FBI investigation until this late date. In order to be a viable relator under the False Claims Act, the information in STF's complaint must not have been publicly disclosed prior to the filing of the complaint and if disclosed, STF must be the original source. 31 U.S.C. §§ 3730(e)(4)(A) & (B), *see, e.g., United States ex rel. Kester v. Novartis Pharms. Corp.*, 43 F. Supp. 3d 332, 356 (S.D.N.Y. 2014). Defendants need detailed information concerning the role that the FBI played in directing Gersh in her so-called undercover investigation, any disclosures of that investigation, and Dr. Gersh's role as confidential informant under an alleged written agreement with the FBI in order to assess any potentially dispositive arguments that STF is not a proper relator. In addition,

information concerning Dr. Gersh's arrangement with the FBI is necessary to assess credibility and bias with respect to key allegations Relator made in its complaint concerning communications between Dr. Gersh and a Crescendo sales liaison. We are only aware as of last week that Dr. Gersh did not engage in these conversations in the ordinary course of business but as a part of a set up specifically to gather information for the FBI.

Faced with this critical new information, Defendants took immediate steps.  In order to obtain information relating to the FBI investigation, on March 10, 2021, Defendants issued a *Touhy* letter to the U.S. Attorney's Office seeking relevant testimony and depositions.  On March 8, 2021, Defendants also noticed the Rule 30(b)(6) deposition of STF, with the need to understand its role in the government's pre-complaint investigation primarily prompting the need for that deposition. But Relator rebuffed these requests at the meet and confer on March 11.

The failure to disclose Dr. Gersh's involvement with the FBI in the period before Relator filed its complaint is alone sufficiently serious to warrant the remedial actions requested by Crescendo and Myriad.  But that failure, however massive, does not stand alone.  There are other significant discovery breaches requiring this Court's involvement:

- *Dr. Gersh's Lack of Preparation as a 30(b)(6) Witness*: Dr. Gersh was designated as the company witness on behalf of her practice, IMGI.  She was woefully unprepared on the designated subjects.  She could not testify to the last names of her employees, their salaries, or the costs associated with drawing a specimen for a Vectra test, information critical to the fair market value of the SPA payments Dr. Gersh received.  Despite admitting that Dr. Gersh was not adequately prepared on these critical topics, counsel for STF refused to produce another witness, and also declined to provide address information or accept service for the two phlebotomists in Dr. Gersh's practice who may be better able to answer these questions.

- *Failure to Adequately Search, Collect, or Produce Dr. Gersh's Documents*: Stunningly, despite document requests to STF and a document subpoena to Felice Gersh MD Inc APC, Dr. Gersh showed up at a her March 5, 2021 deposition with an unproduced document relating directly to one of the allegations in the complaint.  In fact, it was a communication with the only Crescendo sales liaison named in the complaint.  Relator has not explained why this document was not previously produced or whether there are other unproduced communications.

- *Failure to Search, Collect, or Produce at all Robert Tygenhof's Documents*: Robert Tygenhof is Dr. Gersh's husband and a practitioner at her practice, IMGI.  At his deposition on March 2, Mr. Tygenhof testified his documents were not even searched for production and that he had not even seen the subpoena.  Further evidencing the concealment, Tygenhof was fraudulently entering into SPAs misrepresenting himself to be an in-office phlebotomist at the direction of his wife whom he described as working with counsel. Dr. Gersh later testified she was acting at the direction of the FBI.

- *Refusal to Search iPhone of Christopher Riedel*: Christopher Riedel is the other 50% owner of STF.  Mr. Riedel's iPhone was not searched for potentially responsive documents, including text messages and calendar entries, despite Mr. Riedel's testimony that his iPhone calendar may disclose the dates of his meetings with Dr. Gersh.

Taken together the discovery failings by the Relator, IMGI, Gersh, and Tygenhof—all of whom are represented by the same counsel—evidence a systemically insufficient approach to discovery.  Relator's counsel said as much.  In the parties' meet-and-confer on March 11, 2021, STF's counsel took the explicit position that the "Relator's conduct is not at

issue" and thus the Relator has less demanding discovery obligations than do Defendants—stating that because Myriad and Crescendo are the defendants, Myriad and Crescendo are forced to abide rules and obligations that do not apply in the same way to the Relator. But this both misses and makes the point: It misses the point in that the Relator is a party in this action, bound by the applicable rules of procedures and discovery obligations, just as any other litigant. And the Relator's conduct is at issue insofar as Myriad is entitled to probe the circumstances under which the Relator supposedly disclosed the conduct at issue to the government—or didn't, as the case may be. It makes the point in that it explains the Relator's insufficient and dilatory approach to discovery—the Relator fundamentally does not see itself as having some of these discovery obligations, which lends credence to the fact that the wholesale discovery failures detailed above were in fact intentional decisions.

Given the totality of the circumstances, Defendants request that the scheduling order deadlines be extended for the limited purpose of remediating the above discovery failings, which includes: the deposition of the two requested IMGI employees; a response from IMGI to the March 8, 2021 document subpoena; a 30(b)(6) deposition of STF; a new 30(b)(6) deposition of IMGI; complete production of all documents responsive to the document requests and August 3, 2020 subpoenas, including an initial search for documents responsive to the subpoena issued to Mr. Tygenhof and a complete set of communications between Dr. Gersh and the Agents; and a privilege log disclosing all withheld communications except those between counsel for STF and their direct clients. Given the pendent subpoenas to the Agents, Defendants request that they be allowed to use any discovery from the Agents even if obtained outside the discovery period. Defendants further move the Court to maintain the current scheduling order deadlines with respect to Relator, which should not benefit from its own discovery deficiencies by having additional time for expert discovery. Defendants reserve all rights with respect to sanctions and other remedies; the instant requests herein are solely to stem the discovery failings of STF.

**RELATOR'S POSITION**

Defendants have dumped tens of thousands of documents on Relator in the final month of discovery, in response to RFPD's served **six months** ago. Accordingly, Relator has not been allowed to depose key employees on critical documents. Moreover, Defendants refuse to respond to contention interrogatories that seek fundamental information about Defendant's litigation position—including which safe harbors, if any, to the Anti-Kickback Statute and Stark Law it believes it can prove at trial. Despite these and other deficiencies, Defendants seek to deflect attention onto the whistleblowers. This case is about Defendants' systematic fraud perpetrated on the government. Relator and its members are not on trial, and their interactions with Defendants were extremely limited. Relator has provided all necessary and required information and continues to triple check all sources to ensure they are complying with their discovery obligations in advance of the March 15 fact discovery cutoff.

1. **DEFICIENCIES IN DEFENDANTS' DISCOVERY EFFORTS**

    a. **Interrogatories**

On January 21, 2021, Relator served interrogatories asking Defendants to, among other things, detail the defenses and safe harbors upon which they intend to rely. See Exhibit 7. Defendants refused. See Exhibits 8 and 9. Contention interrogatories are proper, and Defendants have all the facts they need to answer which safe harbors they intend to rely on, which have nothing to do with Relator's conduct or document production. Defendants should be compelled to answer these interrogatories.

### b. Document Production

Defendants have waited until late in the discovery process to produce well over a hundred thousand pages of records. On September 8, 2020, Relators served Defendants with extensive document production requests. Between September 2020 though the end of January 2021, Defendants produced only 12,977 documents with 50,582 pages. In February, after Relators had already begun taking depositions, that production quantity began skyrocketing. In February, Defendants produced 44,204 documents with 140,858 pages. And their production is apparently not yet concluded. In March, so-far, Defendants have produced another 1,537 documents with 8,446 pages, a matter of days before the cutoff. At minimum, Defendants should be precluded from challenging the admissibility of these late-produced documents at the summary judgment stage.

Relators also note that at *no time* in this discovery process have Defendants ever submitted a privilege log in any shape or form, despite repeated requests for such a log to be produced. In the Discovery Call, Defendants promised to submit a log by the fact discovery cutoff. A log provided on the very last day of discovery is of little, if any, utility.

## 2. PERCIEVED DEFICIENCIES IN RELATORS' DISCOVERY EFFORTS

### a. Last-minute deposition subpoenas of IMGI employees

One week before the fact discovery cut-off, Defendants served notices of subpoenas on two employees of IMGI, the medical practice of one of Relator's members. To date, those subpoenas have apparently not been served. Defendants claim they did not know of the identify of those individuals until the deposition of Dr. Gersh on March 5, 2021. That is not true. The names of the two IMGI employees are found in a plethora of documents produced by both Relator and Defendants months ago. Relator did not list these people in their interrogatory responses because they are not familiar with the claims in this case. Given that the subpoenas have yet to be served, and the deponents are unlikely to have any probative information, there is no justification for allowing these tardy depositions to proceed.

### b. Last-minute document subpoena to IMGI

One week before the fact discovery cut-off, Defendants also served a redundant document subpoena on IMGI (the subpoena is unenforceable because it seeks production more than 100 miles away from IMGI's place of business). Defendants contend that the untimely subpoena is necessary because Relator failed to search relevant custodian records or produce relevant documents, while Defendants have searched dozens of custodians and produced over a hundred thousand pages of records, reviewed by dozens of lawyers. As an initial matter, this comparison is bogus. The reason for the massive production discrepancy is driven by the vastly different nature of the parties being searched. The whistleblowers have done nothing but expose fraud on the government. Defendants, in contrast, knowingly and willfully violated the False Claims Act for years. Of course the volume of records will be disparate.

Moreover, Relator has produced **thousands** of pages of documents and patient records. Certain records repositories are currently being triple checked for documents that may have been missed in the initial records collection process, which happened over four years ago. Any new relevant records will be produced before the discovery cutoff, similarly to how Defendants continue to produce thousands of pages of records up until the deadline.

### c. Last-minute 30(b)(6) deposition of Relator STF, LLC

Defendants have already deposed both members of Relator STF, LLC. Now they seek a second bite at the apple, again serving a subpoena exactly one week prior to the fact discovery cut-off. Defendants' purported justifications are that certain documents were produced late in the discovery period by Relator, and that Relator's members could not recall

certain facts in their depositions.  As described above, Relator has produced thousands of pages of documents and patient records, and unlike Crescendo, produced them **before** the depositions of the custodians of those documents.

### d. Additional designee on certain topics of the Rule 30(b)(6) deposition of IMGI

Dr. Gersh could not remember the last names of some of her former employees in deposition, and did not have salary and wage information for them.  On this basis, Defendants seek another deposition.  Relator has already offered to provide that information via declaration or interrogatory response.  Defendants refused this reasonable compromise.

### e. Documents responsive to August 3, 2020 subpoenas

Defendants seek documents that do not exist, or have already been produced.  As mentioned above, Relator had limited communications with Defendants.  Accordingly, the universe of documents in Relator's possession is extremely limited.  Relator is a whistleblower—not a defendant, and not even a company insider.  Logically, Defendants' discovery burden will therefore be orders of magnitude greater—much like a named plaintiff in a consumer class action will have extremely limited documents in comparison to a corporate defendant.  Defendants point to an August 20 subpoena of Mr. Tygenhof's records, which Mr. Tygenhof did not remember seeing at his deposition.  The subpoena was duplicative of records already produced by Mr. Tygenhof, so Defendants' questioning of him on the redundant subpoena was misleading.

### f. Last-minute subpoenas of government agents

As in every FCA case, the government investigated the allegations of this case.  Defendants knew this, as they received investigative subpoenas from the government during the under-seal period.  Defendants were free to subpoena the government for records related to that investigation on day one.  They nonetheless waiting until the final week of fact discovery to serve subpoenas on two government agents, claiming they only became aware of them in the deposition of Dr. Gersh.  These untimely subpoenas should not be allowed to proceed.

### g. Chris Riedel's documents

Defendants have requested that Relator search the iPhone calendar of one of the Relator's members, Chris Riedel, for any meetings with Relator's other member, Dr. Gersh.  As has been testified to by both Mr. Riedel and Dr. Gersh, there is no period where they spoke or interacted that was not affiliated with this litigation, and as such, all that information is protected.  They have no business together other than the pursuit of this litigation.  There is no potential value to searching Mr. Riedel's iPhone calendar for privileged communications over litigation.

Defendants also seek the confidential settlement amount in a case that Mr. Riedel settled arising out of litigation that settled over a decade ago, wholly unrelated to Crescendo or its conduct.  Defendants only seek that information to smear Mr. Riedel as a money-hungry whistleblower, not for any colorable legal purpose.

### h. Privilege log

Finally, Defendants bemoan that Relator has failed to produce a privilege log with all the information they desire, even though Relator has supplied a privilege log, and Defendants have not.  Relator will supply their second log with updated information when Defendants provide their first.

The parties rely on the following exhibits, which are appended hereto for ease of reference.

*Defendants' Cited Exhibits*

- Exhibit 1 -  STF Responses to Interrogatories (2020.08.27)
- Exhibit 2 – December 14, 2020 email from B. Hill to C. Donovan
- Exhibit 3 – STF Privilege Log 2020.12.15
- Exhibit 4 – Defendants' First Set Requests for Production to Relator (2020.07.07)
- Exhibit 5 – Subpoena to Felice Gersh MD Inc APC Subpoena 2020.08.03
- Exhibit 6 – Subpoena to Robert Tygenhof (2020.08.03)

*Relator's Cited Exhibits*

- Exhibit 7 - Relator STF, LLC's Special Interrogatories To Defendants, Set 1 2021.01.21
- Exhibit 8 - Crescendo Responses and Objections to Interrogatories 2021.03.02
- Exhibit 9 - Myriad Responses and Objections to Interrogatories 2021.03.02

The parties also include their correspondence on these issues:

- Exhibit 10 - 2021.03.04 Ltr. from C. Donovan to B. Hill
- Exhibit 11- 2021.03.09 Letter from B. Hill to Crescendo
- Exhibit 12 - 2021.03.10 Letter from B. Hill to C. Donovan
- Exhibit 13 - 2021.03.11 Ltr. from C. Donovan to B. Hill
- Exhibit 14- 2021.03.11 Ltr. from C. Donovan to B. Hill
- Exhibit 15 - 2021.03.11 Ltr. from G. Joffre to J. Berger
- Exhibit 16 - 2021.03.11 Ltr. C. Donovan to B. Hill

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I hereby attest that all signatories to this document have concurred in its filing and that the parties met and conferred in person by telephone on March 11, 2021 in good faith to resolve their dispute(s) prior to filing this statement.

Dated: March 12, 2021                                           By: /s/ Caroline S. Donovan