# **EXHIBIT 8**

GISELLE J. JOFFRE (admitted pro hac vice)
gjoffre@foleyhoag.com
CAROLINE S. DONOVAN (admitted pro hac vice)
cdonovan@foleyhoag.com
JOANNA MCDONOUGH (admitted pro hac vice)
jmcdonough@foleyhoag.com
**FOLEY HOAG LLP**
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone:   (617) 832-1000
Facsimile:    (617) 832-7000

CAROLYN F. McNIVEN, (SBN 163639)
mcnivenc@gtlaw.com
JEFFREY P. PALMER (SBN 229314)
palmerj@gtlaw.com
BRIAN Q. HALL (SBN 318209)
hallbri@gtlaw.com
**GREENBERG TRAURIG, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111
Telephone: (415) 655-1270
Facsimile: (415) 707- 2010

*Attorneys for Defendants Crescendo Bioscience, Inc. and Myriad Genetics, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA; STATE OF CALIFORNIA;** *ex rel.* **STF, LLC, an organization,**<br><br>Plaintiffs,<br><br>v.<br><br>**CRESCENDO BIOSCIENCE, INC., a Delaware Corporation, and MYRIAD GENETICS, INC., a Delaware Corporation,**<br><br>Defendants. | **CASE NO. 3:16-cv-02043-TSH**<br><br>**CRESCENDO'S RESPONSES TO RELATOR STF, LLC'S FIRST SET OF SPECIAL INTERROGATORIES** |

1
CRESCENDO'S RESPONSES TO RELATOR STF, LLC'S FIRST SET OF SPECIAL INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Crescendo Bioscience, Inc. ("Crescendo") submits these responses and objections to Plaintiff STF, LLC's First Set of Special Interrogatories (the "Interrogatories").

**PRELIMINARY STATEMENT**

Crescendo's responses to the Interrogatories are based on information known to it at this time, and are set forth without prejudice to its right to supplement these responses or to assert additional objections should it discover additional information or grounds for objection at any time before trial. Crescendo's responses are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any document referenced or answer provided in response to the Interrogatories; (b) the right to object on any ground to the use of the documents referenced or answers provided in response to the Interrogatories at any hearing or trial, or; (c) the right to object on any ground at any time to a demand for further responses to the Interrogatories.

The service of these responses and objections does not constitute a waiver of the attorney-client privilege, the work product doctrine, or any other privilege, law, or immunity from discovery that may be applicable to any information provided, to any document identified, or to information contained in any such document. Reference to any document or disclosure of any information that is privileged, that was prepared in anticipation of litigation, or that is otherwise legally protected from production and/or disclosure, is inadvertent and not intended to and does not constitute a waiver of any privilege or of any other ground for objection to discovery of such document or the information contained therein or subject matter thereof or of Crescendo's right to object to the use of such document or the information contained therein.

Crescendo has responded to the Interrogatories as it presently interprets and understands them. If STF subsequently asserts an interpretation of any Interrogatory that differs from Crescendo's interpretation, Crescendo reserves the right to supplement its objections and/or responses.

Additionally, nothing in Crescendo's responses and objections to the Interrogatories is intended to mean that Crescendo agrees with any implicit or explicit characterization of any facts, events, circumstances, or issues in the Interrogatories.

## **GENERAL OBJECTIONS**

Crescendo's responses to the Interrogatories are made subject to the following objections, which apply to each Interrogatory as if incorporated and set out in full in response to each:

1. Crescendo objects to the Interrogatories and the accompanying instructions and definitions to the extent that they seek information beyond the scope of discovery allowed by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, or any other applicable law or rule, including without limitation to the extent that information sought is not reasonably calculated to lead to the discovery of admissible evidence.

2. Crescendo objects to the Interrogatories and the accompanying instructions and definitions to the extent they seek information or documents that are protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege, protection, rule, or duty of confidentiality that precludes or limits the production of documents or disclosure of information.

3. Crescendo objects to the Interrogatories to the extent they are vague, ambiguous, or do not describe the information, item, or category of documents sought with reasonable particularity.

4. Crescendo objects to the Interrogatories to the extent they are directed to issues of law.

5. Crescendo objects to the Interrogatories as premature to the extent they are directed to mixed issues of law and fact.

6. Crescendo objects to the Interrogatories as premature to the extent they call for any expert opinion. Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case.

7. Crescendo generally objects to the Definitions set forth in the Interrogatories to the extent they attempt to define words differently than or beyond their ordinary meaning.

8. Crescendo objects to Definition A.2 for "Crescendo" insofar as it is impermissibly overinclusive, incapable of being responded to as defined, and includes any and all "domestic and foreign parents, affiliates, joint venturers, predecessors (including Riley Genomics, Inc.), and successors (including Myriad Genetics, Inc.), including but not limited to any entity of which it, directly or indirectly, any time, acquired more than 50% of the assets by merger, consolidation, reorganization, purchase, or otherwise[,]" "any entity having at least a 25% legal or beneficial ownership interest in Crescendo Bioscience, Inc." and all "attorneys, accountants, consultants, [and] independent contractors." Crescendo answers solely on behalf of Crescendo Bioscience, Inc.

9. Crescendo objects to Definition A.11 for "you" and "your" on the grounds that these terms as defined are over-inclusive, incapable of being responded to as defined, encompass time periods irrelevant to this action, and purport to include "CRESCENDO from the time of its founding to the present and Myriad from the time of its acquisition of or merger with CRESCENDO to the present." Crescendo answers solely on behalf of Crescendo Bioscience, Inc. for the period 2010 to present.

10. Crescendo objects to Definition A.9 for "Out of Pocket Maximums" insofar as includes, covers, or is intended to describe anything other than the maximum-out-of-pocket program. Crescendo will answer with regard to the maximum-out-of-pocket program.

11. Crescendo objects to Instruction B.2 insofar as it would require inquiry outside of Crescendo, as defined above.

12. Crescendo objects to Instruction B.4 insofar as it would require reference within (and not simply to) documents.

13. By providing any responses, Crescendo does not concede that the Interrogatories seek discoverable documents or that any information contained in Crescendo's responses is relevant to the issues in this case. Crescendo reserves the right at any time to further revise, correct, add to, supplement, modify, or clarify the specific responses set forth below or the information contained therein, although Crescendo does not hereby undertake to do so except to the extent required by Federal Rule of Civil Procedure 26(e).

## SPECIFIC OBJECTIONS AND RESPONSES

Crescendo specifically incorporates each of the foregoing General Objections into its specific objections to the Interrogatory. The following specific response is subject to, and without waiver of, these General Objections.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail all steps You took to calculate the FMV of SPA payments, including but not limited to, the method of calculation, the results, the identity of the individuals involved in those calculations, and a description of all documents you reviewed or created in connection with those calculations.

**RESPONSE TO INTERROGATORY NO. 1:**

Crescendo objects to this Interrogatory as overbroad and unduly burdensome because (inter alia) it would require Crescendo to describe literally hundreds of documents reviewed or created during an over-10 year period in connection with FMV calculations, including those already

produced in discovery in this case, and create a detailed narrative of over ten-years of activity. Crescendo further objects to this Interrogatory as premature to the extent it calls for any expert opinion(s).  Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case.

Subject to and without waiving any objections, Crescendo responds as follows: with the input of third-party experts, Crescendo established a written Specimen Processing Agreement (SPA) protocol, calculated the fair market value of fees to be paid to physician practices with whom they entered SPAs, and executed individual SPAs with physician practices pursuant to which Crescendo paid a SPA fee for the proper collection, processing, handling and shipment, in accordance with a detailed protocol, of samples for the Vectra test. The particular SPA fee amount that Crescendo agree to pay each practice that received such a fee, along with other representations and contractual obligations, is reflected in the written SPA agreements with the practices, all of which have been produced in discovery.

At the outset of Crescendo's SPA program, which commenced prior to receiving Medicare coverage, Crescendo determined that the fair market value of the services needed for the proper collection, processing, handling, and shipment of samples for the Vectra test, was in the range between $10 and $15.  This fee amount was determined by Crescendo's operations group with input from John Taylor, Ted Snelgrove and Sharon Dwyer, using a market-based approach.  In limited circumstances, based on the individual characteristics of the specific practice, including geographic location and practice costs, exceptions to the $10-15 range were considered and sometimes approved. During the relevant time period, Sharon Dwyer received requests for exceptions to the standard SPA fee amount, and Ted Snelgrove reviewed and approved such requests.

In March of 2012 and in February and March of 2013, Crescendo engaged outside compliance consultants, among other things, to help ensure that Crescendo's activities were in compliance with all applicable laws and regulations. In the spring or summer of 2013, one of those consultants, Chirag Asaravala, drafted a written SPA policy to reflect Crescendo's then-existing practice of setting the amount of the SPA fee to be up to $15 based on an assessment of similar processing reimbursement rates in Crescendo's major markets.

In the fall of 2014, Crescendo's Vice President of Compliance Nelson Lam, personally conducted an assessment and calculation of the fair market value of the SPA fee to cover costs of work performed. The fee amount was established with no consideration of the past, present or future order volume by the prescribing physician.

Mr. Lam consulted with Altegra Health Solutions, a third party FMV analysis firm, to determine the appropriate methodology for conducting a FMV assessment of Crescendo's SPA fee. Based on that consultation, Mr. Lam conducted an analysis that included (1) a Time/Motion study to determine the actual personnel time spent on the specimen processing and handling procedure (post-venipuncture) for Vectra DA samples; (2) an assessment of the personnel salary cost of the various types of staff carrying out the processing and handling; and (3) an adjustment to the salary cost to account for the cost of other (non-salary) employee benefits, insurance, etc.

Mr. Lam calculated the value of specimen processing and handling components of the SPA fee independently from the value of the specimen collection process (venipuncture). For the venipuncture component of the SPA fee, Mr. Lam utilized the established Medicare reimbursement value of $3 per venipuncture. He added this standard venipuncture amount to the amount he calculated as the FMV for processing and handling services to arrive at the total FMV compensation for each Vectra DA sample processed.

Mr. Lam personally selected seven physician practices for on-site time/motion studies. He chose these practices to obtain a broad representation of customers, practice types and geographic locations. Mr. Lam personally visited each of the seven practices, observed staff carrying out the various processing and handling steps, and measured the time spent on those tasks. Mr. Lam did not include "idle time" in his calculation (e.g., the time during which a given staff member was idle and not performing actual tasks such as when the staff waited while a sample was being centrifuged). Mr. Lam determined that it took on average 20 minutes (1/3 of an hour) to complete the processing and handling steps based on observation of 59 samples across the seven practices visited; his observations and calculations are reflected in his workpapers.

Mr. Lam determined that a range of personnel types (e.g. Nurses, Techs, etc.) were involved in the processing and handling of specimens, depending on the individual practice. He used the observed ratio of those personnel types as representative of all practices with established SPAs (1:7 Nurse, 3:7 Lab Techs and 3:7 Med Techs). Mr. Lam then utilized publicly available salary data for those staff types in the various regions across the U.S., and utilized for the salary adjustment publicly available data from the U.S. Bureau of Labor Statistics National Compensation Survey. Mr. Lam's salary calculations are reflected his workpapers, as are the publicly available salary data. Mr. Lam multiplied the processing time by the salary data to calculate a fair market value of $12, rounded to the nearest dollar. Mr. Lam then added $12 and $3 to reach the final FMV of $15.

.

**INTERROGATORY NO. 2:**

Describe in detail all the ways in which You tracked, recorded, evaluated, or analyzed any referrals from doctors' offices to CRESCENDO.

**RESPONSE TO INTERROGATORY NO. 2:**

Crescendo objects to this Interrogatory as overbroad and unduly burdensome insofar as it requests "all the ways" in which "any referrals from doctors' offices" were kept, and presumably includes every medical and billing record generated in the course of examining any and all samples sent from any and all physician offices.

Subject to and without waiving any objections, Crescendo states that Crescendo is a diagnostic testing company whose product, VectraDA, is a multi-biomarker blood test validated to measure rheumatoid arthritis. Crescendo's test is ordered by physicians, including rheumatologists, or third-party laboratories. Either the physician office or the third-party laboratory prepares the specimen and then sends the specimen to Crescendo for analysis with relevant sample and patient identifying information.

Crescendo tracked and recorded every sample received and VectraDA test ordered. Specifically, when a physician wished to submit a specimen to Crescendo for testing, the physician would complete a test requisition form, which included (i) patient identifying information, (ii) billing information, (iii) clinician information, (iv) a request for VectraDA, and (v) an attestation that VectraDA was medically necessary. The physician returned the test requisition form to Crescendo along with the specimen.

Upon Crescendo's receipt of the test requisition form and sample, a Crescendo data entry team entered the contents of the test requisition form in a database via optical scanning and manual means. This information included the patient, billing, and clinician information. If there was missing or incomplete information, the data entry team obtained such information directly from the physician offices.

The specimen was then processed, and test results were generated, with various patient and clinician information being recorded and tracked along the way in order, for example, to properly identify and deliver the test results to the ordering physician. Certain information was also recorded,

tracked and utilized in order to carry out the various steps necessary to bill the patient or third-party payor for the test.

On a monthly basis, Crescendo's Customer Service [department?] generated an invoice for each in-office SPA account based on the information contained within the test requisition form. After generating each invoice, Customer Service sent the invoice to the physician office and the appropriate clinical rheumatologist liaison. Customer Service then sent the invoice to Accounts Payable for payment.

In addition, Crescendo's marketing teams tracked, reviewed, and analyzed the VectraDA tests ordered by physician practice groups. This tracking and analysis by the marketing team occurred in the same way regardless of whether the physician's office that ordered the test had (or did not have) an SPA. Clinical rheumatologist liaisons in turn relied on data concerning past VectraDA utilization to inform outreach to existing accounts (i.e., physician practices with SPA agreements).

This information is contained extensively across the documents produced by Crescendo. Indeed, many thousands of documents produced in discovery reflect the tracking, recording, analyzing or evaluating of Vectra tests ordered, including but not limited to, aggregated claims data CR200050511, CR200050512, and CR200055459

**INTERROGATORY NO. 3:**

Describe in detail the decision to cease or curtail SPA payments, including who was involved, when the decision was made, and any financial accounting conducted regarding the expected or actual loss of business due to cessation of SPA payments.

**RESPONSE TO INTERROGATORY NO. 3:**

Crescendo objects to this Interrogatory as unduly vague and overbroad insofar and among other things it presumes that there was a single "decision" that related to all SPA payments; is unlimited in terms of time, place, and circumstance; and presumes that there in fact was a decision to "cease or curtail SPA payments" to all recipients on a single day and time. Crescendo further objects

CRESCENDO'S RESPONSES TO RELATOR STF, LLC'S FIRST SET OF SPECIAL INTERROGATORIES

to this Interrogatory insofar as it purports to characterize in any way the business judgment to terminate physician office SPAs either generally or individually.

Subject to and without waiving any objections, Crescendo states that during periods in which Crescendo made SPA fee payments to a given physicians' office, it continually confirmed that the SPA payments provided reflected fair market value, as previously described in Interrogatory No. 1 and incorporated herein by reference. In 2017, Crescendo terminated physician office SPAs that were no longer being used; these terminations (and termination decisions) were made on an individual, practice-by-practice basis.

In the summer 2018, Crescendo terminated its physician office SPA program generally and the remaining individual physician office SPAs at the direction of senior leadership, including Bernard Tobin. By that point in time, tests were increasingly being ordered by third-pary laboratories, rather than individual physicians in a physician group. For example, LabCorp had begun to handle an increasing number of specimens under its existing SPA with Crescendo. Additionally, Crescendo had in place an increasing number of SPAs with regional laboratories and, in 2018, secured a SPA with Quest Laboratories. Because it had SPAs with these national and regional laboratory companies, Crescendo believed that it could terminate its SPAs with individual physician offices, which had logistical complications and as such required extensive administration across numerous diverse physician offices. By directly contracting with a handful of national and regional laboratories, Crescendo was able to increase its efficiency and decrease attendant administrative costs otherwise associated with its physician office agreements. Further, the in-office SPAs presented an increased risk of audit to both Crescendo and the physician offices, requiring an expenditure of time and money that was avoided with the laboratory SPAs that were in place by the summer of 2018.

Following termination of the physician office SPAs, Crescendo expected a short-term reduction in volume of approximately 15 percent due to the logistics of transition and to potential operational issues with the anticipated increase in volume of patients being directed to third-party laboratories, like Quest. Crescendo expected a return to its previous volumes within one to two

11
CRESCENDO'S RESPONSES TO RELATOR STF, LLC'S FIRST SET OF SPECIAL INTERROGATORIES

years.  Actual volumes rebounded more slowly than expected given operational issues with Quest, including, for example, patients failing to bring their test kit to the Quest patient service center and inadequate training at the Quest patient service center causing patients to be turned away.

At all times, Crescendo intended its operations to be compliant with all applicable laws and regulations, and believed, reasonably and in good faith, that its in-office SPA payments pursuant to the written SPAs were compliant because they reflected fair market value for the services provided.

**INTERROGATORY NO. 4:**

Describe in detail the decision to cease or curtail use of Out Of Pocket Maximums, including who was involved, when the decision was made, and any financial accounting conducted regarding the expected or actual loss of business due to cessation of Out Of Pocket Maximums.

**RESPONSE TO INTERROGATORY NO. 4:**

Crescendo objects to this Interrogatory as vague insofar as it seeks it seeks information concerning "the decision to . . . curtail use of Out Of Pocket Maximums."  Crescendo further objects to this Interrogatory insofar as it purports to characterize in any way the business judgment to terminate Out Of Pocket Maximums.

Subject to and without waiving any objections, Crescendo states that Crescendo terminated the maximum-out-of-pocket in the spring of 2018.  This was done at the direction of senior leadership, including Bernard Tobin.  From its inception, the maximum-out-of-pocket program was intended as a temporary solution complementing a financial assistance program that aided the very poorest patients, to help ensure that, while patients who could afford to pay something would have to bear some financial responsibility, that cost would be limited in a way that was consistent with the typical out of pocket or co-pay cost for other relevant health services.

The maximum-out-of-pocket program was in place for a period of time during which Crescendo worked to obtain commercial insurance coverage for the VectraDA test.  By the spring of 2018, Crescendo had begun to obtain pricing agreements from some commercial payors for the

VectraDA test within those contracts.  In these circumstances, depending on the terms of the particular insurance contract, Crescendo was contractually required to bill according to the insurance contracts.  Crescendo eliminated the maximum-out-of-pocket program at this time, as it continued to negotiate for coverage with other commercial payors.

Following termination of the maximum-out-of-pocket program, Crescendo expected a roughly 10 percent reduction in volume.  In part, Crescendo expected this reduction due to patient concern about their financial burden, as well as potential confusion from the complex insurance reimbursement regimes dictated by the coverage contract and its interplay with an individual patient's insurance, including, for example, high-deductible plans, plans that required co-pays, and in-network versus out-of-network coverage.

**INTERROGATORY NO. 5:**

Identify all "safe harbors" on which you intend to rely to defend against Relator's claims in this lawsuit, including Anti-Kickback or Stark exceptions and any other statutory or regulatory exceptions, and identify all facts supporting your contention that each such exception or "safe harbor" applies.

**RESPONSE TO INTERROGATORY NO. 5:**

Crescendo objects to this Interrogatory insofar as it does not appropriately characterize paragraph 36 of STF's First Amended Complaint.  Crescendo further objects to this Interrogatory to the extent it is directed to issues of law.  Additionally, as directed to mixed issues of law and fact, this Interrogatory is premature until discovery has been completed.  Furthermore, Crescendo objects to this Interrogatory as premature to the extent it calls for any expert opinion.  Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case.  To the extent a response is required while discovery is ongoing, Crescendo states that it will rely on applicable safe harbors under all applicable statutes based on the evidence adduced and arguments made by STF.

**INTERROGATORY NO. 6:**

State the basis for Your contentions that none of the OIG Advisory Opinion 05-08, the Notice issued by the California Department of Public Health, or the 1994 OIG Special Fraud Alert have any legal relevance as stated in paragraphs 23, 29 and 53 of Your Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 6:**

Crescendo objects to this Interrogatory to the extent it is directed to issues of law. Crescendo further objects that this Interrogatory, as directed to mixed issues of law and fact, is premature until discovery has been completed. Additionally, Crescendo objects to this Interrogatory as premature to the extent it calls for any expert opinion. Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case. To the extent a response is required while discovery is ongoing, Crescendo states that its actions complied with law and that Crescendo intended all of its operations to be compliant with applicable laws and regulations, and believed, reasonably and in good faith, that all of its operations were compliant with applicable laws and regulations.

**INTERROGATORY NO. 7:**

State the basis for Your denial that CRESCENDO and MYRIAD submitted claims for payment to Medicare which were tainted by illegal kickbacks in paragraph 36 of Your Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 7:**

Crescendo objects to this Interrogatory insofar as it does not appropriately characterize paragraph 36 of STF's First Amended Complaint. Crescendo further objects to this Interrogatory to the extent it is directed to issues of law. Additionally, as directed to mixed issues of law and fact, this Interrogatory is premature until discovery has been completed. Furthermore, Crescendo objects to

this Interrogatory as premature to the extent it calls for any expert opinion. Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case. To the extent a response is required while discovery is ongoing, Crescendo states that there were no illegal kickbacks and consequently its claims for reimbursement were not "tainted" by illegal kickbacks.

**INTERROGATORY NO. 8:**

State the basis for Your denial that SPA payments are designed to induce physicians to order the VectraDA test from CRESCENDO and to induce the referral of patients as stated in paragraph 49 of Your Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Crescendo objects to this Interrogatory insofar as it does not appropriately characterize paragraph 49 of STF's First Amended Complaint. Crescendo further objects to this Interrogatory to the extent it is directed to issues of law. Additionally, as directed to mixed issues of law and fact, this Interrogatory is premature until discovery has been completed. Furthermore, Crescendo objects to this Interrogatory as premature to the extent it calls for any expert opinion. Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case. To the extent a response is required while discovery is ongoing, Crescendo states that SPA payments were designed to compensate requesting physicians pursuant to a written contract for the fair market value of the services rendered.

**INTERROGATORY NO. 9:**

State the basis for Your denial that CRESCENDO presented to Medicare claims for reimbursement of laboratory tests which were ordered by physicians in exchange for kickbacks and that each of these claims constitutes a false claim in violation of the False Claims Act (31 U.S.C. § 3729 et seq.) as stated in paragraphs 51 and 52 of Your Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 9:**

Crescendo objects to this Interrogatory insofar as it does not appropriately characterize paragraphs 51 and 52 of STF's First Amended Complaint and Crescendo's answer thereto. Crescendo further objects to this Interrogatory to the extent it is directed to issues of law. Additionally, as directed to mixed issues of law and fact, this Interrogatory is premature until discovery has been completed. Furthermore, Crescendo objects to this Interrogatory as premature to the extent it calls for any expert opinion. Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case. To the extent a response is required while discovery is ongoing, Crescendo states that there were no kickbacks or false claims because SPA payments compensated requesting physicians pursuant to a written contract for the fair market value of the services rendered.

**INTERROGATORY NO. 10:**

State the basis for Your denial that the agreements not to collect from patients and the cap on the amount of money a patient is responsible to pay both violate the False Claims Act as stated in paragraph 62 of Your Answer to the First Amended Complaint.

**RESPONSE TO INTERROGATORY NO. 10:**

Crescendo objects to this Interrogatory insofar as it does not appropriately characterize paragraph 62 of STF's First Amended Complaint and Crescendo's answer thereto. Crescendo further objects to this Interrogatory to the extent it is directed to issues of law. Additionally, as directed to mixed issues of law and fact, this Interrogatory is premature until discovery has been completed. Furthermore, Crescendo objects to this Interrogatory as premature to the extent it calls for any expert opinion. Crescendo will provide discovery regarding expert opinions in accordance with Fed. R. Civ. Proc. 26 and the scheduling order in this case. To the extent a response is required while discovery is ongoing, Crescendo states that the maximum-out-of-pocket program did not apply to any patient with respect to whom Crescendo sought Vectra test reimbursement from federal healthcare reimbursement

programs and does not violate the False Claims Act. In addition, Crescendo states that, at all times, Crescendo intended all of its operations to be compliant with applicable laws and regulations, and believed, reasonably and in good faith, that all of its operations were compliant with applicable laws and regulations.

### Jurat

On behalf of the above-named Crescendo Bioscience, Inc. ("Crescendo") in the above-entitled action, I have read the foregoing I have read the foregoing Responses to Relator STF, LLC's First Set of Special Interrogatories. The information provided therein was prepared by or with the assistance of agents, employees, representatives or attorneys of Crescendo, or others believed to have relevant information, and with the assistance and advice of counsel, upon which I have relied. The Responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information thus far discovered in the course of the preparation of these Answers, and currently available to Crescendo. Consequently, Crescendo reserves the right to make any changes in or additions to any of these Responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available.

Subject to the limitations set forth herein, the foregoing is true to the best of my present knowledge, information, and belief. I certify under penalty of perjury on behalf of Crescendo that the foregoing is true and correct. Executed on this 1st day of March, 2021.

_____

Casey Barnett
Director, Commercial Operations & Strategic Alliances
Crescendo Bioscience, Inc.

As to Objections:

__/s/ Caroline S. Donovan_____

FOLEY HOAG, LLP
Giselle Joffre (admitted *pro hac vice*)
Caroline Donovan (admitted *pro hac vice*)
Joanna McDonough (admitted *pro hac vice*)
155 Seaport Boulevard
Boston, MA 02210-2600
Tel. No. (617) 832-1000

Dated: March 1, 2021

CRESCENDO'S RESPONSES TO RELATOR STF, LLC'S FIRST SET OF SPECIAL INTERROGATORIES

## **CERTIFICATE OF SERVICE**

I am employed in Suffolk County, Massachusetts. I am over the age of 18 years and not a party to this action. My business address is Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210. On this day, March 1, 2021, I served the following document(s) in the manner described below:

1. **CRESCENDO'S RESPONSES TO RELATOR STF, LLC'S FIRST SET OF SPECIAL INTERROGATORIES**

✓ **VIA E-MAIL:** My e mail address is cdonovan@foleyhoag.com. I am readily familiar with this firm's practice for causing documents to be served by e-mail. Following that practice, I caused the aforementioned document(s) to be emailed to the addressee(s) specified below.

Niall P. McCarthy (nmccarthy@cpmlegal.com)
Justin T. Berger (jberger@cpmlegal.com)
Bethany Hill (bhill@cpmlegal.com)
Cotchett, Pitre & McCarthy, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010

Counsel for Relator STF, LLC

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed at Boston, Massachusetts on March 1, 2021.

                                                  */s/ Caroline S. Donovan*
                                                      Caroline S. Donovan